Justices SAYLOR, EAKIN, BAER, TODD and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

I join the majority opinion for the most part, although I differ with the notion that the legality of a sentence is wholly independent of the legality of the underlying conviction. *See* Majority Opinion at 461–62. Since a conviction is the essential supporting infrastructure for a sentence, I suggest that "illegality" with respect to the former extends to the latter as well. *Cf. Fiore v. White,* 531 U.S. 225, 228–29, 121 S.Ct. 712, 714, 148 L.Ed.2d 629 (2001) (*per curiam*) (holding that a conviction for conduct which was not prohibited by a statute, as properly interpreted by a subsequent decision, violates due process, despite previous litigation of claim on direct appeal). The alternative is for courts to accept as legal a sentence which is grounded upon an illegal conviction.

From my point of view, the difficulty in this line of inquiry lies in establishing an appropriate understanding of the use of the term "illegality," for the relevant purposes. *See generally Commonwealth v. Foster,* 609 Pa. 502, 539–41, 17 A.3d 332, 355–57 (2011) (Saylor, J., concurring) (favoring a return to the concept of *"per se"* illegality as the appropriate litmus). Certainly, I support the majority's explanation that routine claims of trial-court error and fact-bound challenges cannot qualify; otherwise, the public interest in the finality of judgments of sentence would be wholly undermined. *Accord id.* Furthermore, in the present case, I am in agreement with the majority that Appellee's grievance as vindicated by the Superior Court is of a type which is fairly subordinated to ordinary rules of issue preservation.

Tracy L. GORDON and Nan Lee Johnson, on their own behalf and on behalf of others similarly situated,

v.

The PHILADELPHIA COUNTY DEMOCRATIC EXECUTIVE COMMITTEE and its Chairman, Robert A. Brady, and the Fortieth Ward (40B) Democratic Executive Committee and its Leader, Anna M. Brown.

Appeal of Nan Lee Johnson and Philadelphia Democratic Progressive Caucus.

Superior Court of Pennsylvania.

Argued June 5, 2013.
Filed Nov. 7, 2013.

Irv Ackelsberg, Philadelphia, for appellants.

Daniel D. McCaffery, Jenkintown, for appellees.

BEFORE: BOWES, OTT, and STRASSBURGER,* JJ.

## OPINION BY STRASSBURGER, J.:

Nan Lee Johnson (Johnson) appeals from the order of September 12, 2012 which held that Johnson lacked standing to pursue this action and entered judgment on behalf of the Philadelphia County Democratic Executive Committee (Executive Committee) and its Chairman, Robert A. Brady (Brady), and the Fortieth Ward (40B) Democratic Executive Committee (Ward 40B) and its Leader, Anna M. Brown (Brown), (collectively Appellees). Also, the Philadelphia Democratic Progressive Caucus (PDPC) appeals the order of September 17, 2012, which dismissed as moot its petition to intervene in the action as a party plaintiff. We affirm.

The trial court summarized the facts of the case as follows.

The December 6, 2011 complaint filed as a class action by plaintiffs Tracy L. Gordon (Gordon) and Johnson claims that the following rule of the Democratic Party of the City and County of Philadelphia (The Party) is invalid on its face and as applied to Gordon when she was removed from her elected position as a Member of the 40th Ward Committee:

If at any time in the opinion of the entire Ward Committee, a member is unfaithful to the Democratic party and the best interested [sic] of the party, refuses, fails or neglects to work in harmony with the Ward Committee, the Ward Committee shall be empowered to remove said person from its membership and declare a vacancy in the membership of the Ward Committee from said division.

Rule VII, Article 1, Section E (The Rule) of the City Committee Rules at [¶] 27 of the Complaint.

The governing body of The Party is the [Executive Committee] and [Brady] ... is its elected Chairman. The Executive Committee consists of "Ward Committees corresponding to the neighborhood geographic divisions within the City of Philadelphia" and each "Ward Committee consists of up to two committee members for each division within the

_____

* Retired Senior Judge assigned to the Superior Court.

ward." Where a ward consists of more than 60 election divisions, it may be divided into units designated as "A" and "B." [Ward 40B] represents one such segment in Southwest Philadelphia. [Brown] is the elected leader of Ward 40B and is employed by Executive Committee as ... Brady's secretary.

... Brown appointed Gordon to fill a Ward Committee position that became vacant between elections. On May 18, 2010, Gordon ran successfully in the primary election as a candidate to fill the position that she held as an appointee. Johnson voted for Gordon. At the first scheduled meeting of the Ward Committee on June 7, 2010, the committee members passed a resolution pursuant to The Rule quoted above that Gordon be removed from her office as a member. Gordon's appeals to the Executive Committee and to the State Democratic Party were unsuccessful.

Count I of the complaint sought Gordon's reinstatement to her elected office. Count II sought declaratory and injunctive relief against future and similar actions by [Appellees]. On July 5, 2012, [counsel for Gordon and Johnson] filed [ (a) a] partial discontinuance as to ... Gordon because [Appellees] reinstated her to the office to which she had been elected and (b) a praecipe to withdraw [the pending] motion for class certification. On July 26, counsel also filed a motion to intervene on behalf of PDPC.

On September 13, 2012, the court granted [Appellees'] motion for summary judgment on the ground that Johnson lacked standing to litigate the action; accordingly there remained no named plaintiff to prosecute the action and the action was disposed of. PDPC's motion to intervene as a party-plaintiff was dismissed as moot on September 17, 2012.

Trial Court Opinion, 1/16/2013, at 2–3 (some citations omitted).

On October 1, 2012, Johnson and PDPC filed a notice of appeal from both orders. Johnson and PDPC (collectively Appellants) and the trial court have complied with Pa.R.A.P. 1925.

Appellants state four questions for this Court's review. ·

1. Whether the Pennsylvania Supreme Court already effectively decided, in *Bentman v. Seventh Ward Democratic Executive Committee*, [421 Pa. 188, 218 A.2d 261 (1966)], that the Philadelphia Democratic Party has no power or authority, through rule or otherwise, to nullify the results of state-conducted primary elections for ward committee members and that aggrieved candidates or voters can seek declaratory relief invalidating any rule that says otherwise.

2. Whether ... Johnson's independent legal standing, as a voter, to pursue Count II of her Complaint—a claim for declaratory and injunctive relief against the Party [R]ule that allows the Party to override the will of the voters—was dissolved when, as a result of the reinstatement of the candidate she voted for in 2010, Count I was rendered moot.

3. Whether the challenged application of the [R]ule is capable of repetition and therefore evading review, because it is still in place and the Appellees have not disavowed their right to use the [R]ule in the future to nullify the will of the electorate.

4. Whether the [trial] court properly disposed of the intervention petition filed by [PDPC] under the Rules of Civil Procedure governing intervention petitions.

Appellants' Brief at 3–4 (trial court answers omitted).

We begin with a discussion of *Bentman,* a factually similar case which Appellants claim controls the outcome of this case. In that case, Schulman and Cox were elected by party electors, including Bentman and Evers, to serve on the 7th Ward Democratic Executive Committee. 218 A.2d at 263. Subsequently, Cox and Schulman were given written notice that the Executive Committee would meet two days later to vote upon their removal as party committeemen. *Id.* At the meeting, they were informed that they failed to act in harmony with the Executive Committee by having worked, prior to being party committeemen, for the nomination of a Senatorial candidate who had not been endorsed by the Philadelphia Democratic organization, and were removed from the Executive Committee. *Id.* Bentman, Evers, Schulman, and Cox brought a mandamus action claiming the removal was without cause and due process. *Id.* The trial court granted the defendants' preliminary objections, holding based upon then-controlling precedent that it lacked jurisdiction to interfere with the internal operations of a political party. Our Supreme Court examined the precedent and subsequent changes in the case law and in the Election Code, including the following provision which was added in 1947.

### § 2842. District committees

Whenever two or more members of a political party shall be elected or appointed, as the rules of the party may provide, as members of a political committee to represent the members of such party in the respective election districts, such members shall constitute a political committee of said political party to function within such election district: Provided, that, When acting in the capacity of a political committee, such duly elected or appointed members shall be subject to the control, direction and supervision of the political committee of which they are members.

25 P.S. § 2842. The Court concluded that the trial court did have jurisdiction to entertain the claims pled in the case. Further, the Court noted the important public role that the Election Code mandates of political party committees, such as in filling vacancies in general elections if the candidate who won the primary dies or withdraws and in selecting nominees for special elections to fill vacancies in Congress or the General Assembly. *Bentman,* 218 A.2d at 267. Indeed, the case at hand offered

a striking example of **direct** action by a political party in a public function in the case of additional judgeships created in Philadelphia County by the legislature in 1964. Since these judgeships were created too late to be included in the voting at the primary election, the nomination of candidates for such judgeships was made by the several political parties in accordance with their party rules.

*Id.* (footnote omitted; emphasis in original).

Given the new role political parties had under the Election Code, and the United States Supreme Court's holding in *Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944), that the selection of nominees for a general election by political parties amounted to state action subject to constitutional considerations, our Supreme Court determined that the trial court "erred in finding a lack of jurisdiction under the pleaded circumstances." *Id.* at 269.

Inasmuch as the legislature has seen fit to impose on political party organization certain duties which bear a **direct** and **substantial** relationship to the selection of public officials by the electoral process the **complete** privacy in nature of party organization recognized by our

courts in the past no longer exists. The assumption of such obligations by party organizations has marked the entry by such party organizations into an area of public activity which renders their activities in such area amenable to judicial supervision. When the activity of a party organization in such area or when its internal organization and membership has a direct bearing on its activity in such area is challenged as constitutionally offensive and it is claimed that, in the performance of its statutorily imposed duties amounting to state action, the party organization violates the concept of due process, then the judiciary not only **may** but must intervene.

The challenge in this action is to the right of a party committee to refuse recognition of membership on such committee to persons who have been lawfully elected to such membership by a majority of the qualified party electors. Membership on such committee, a status now legally recognized, is an important right and privilege not only to the person elected but also to the voters who elected such person to act as their representatives on the committee. Membership on that committee carries with it the right to participate in selection of the political body which, under the legislative direction, in certain instances, selects the party nominees for public office, an activity clearly constituting state action under the 14th Amendment. Deprivation of such membership and the concomitant right of participation in the selection of public officers bears such a **direct** and **substantial** relationship to the electoral process as to be a matter of judicial concern; only by the intervention of the courts can the constitutional limitations on the exercise of state action be safeguarded.

To the extent that the instant action of the Executive Committee bears a re-lationship to the state action inherent in the selection of party nominees for public offices, such action may be tested in the judicial area to determine whether the action of the Executive Committee denying membership on the Committee to the chosen representatives of the party electorate offends against the constitutional provision mandating due process in state action.

*Id.* at 269 (emphasis in original). The Court, accordingly, reversed the grant of the defendants' preliminary objections and remanded the case for further proceedings.

Thus, contrary to Appellants' assertion, *Bentman* did **not** hold that the Rule was "null and void with regard to any claim of authority by Party officials to be able to override the results of a primary election." Appellants' Brief at 14. *Bentman* did not nullify the Rule on its face or even merely as applied to the particular facts surrounding the removal of Cox and Schulman. *Bentman* was decided based on the standard governing preliminary objections, which requires the court to accept as true all well-pleaded facts of the complaint. *See Bentman*, 218 A.2d at 263 n. 3.

More importantly, Appellants do not allege that the removal of Gordon bore any relationship to the selection of party nominees for public office. The holding in *Bentman* was that the court had jurisdiction to entertain a claim that removal of Schulman and Cox pursuant to the Rule violated due process **to the extent that the removal bore a relationship to the selection of party nominees for public office.** Hence, the highly-significant qualification to the holding of *Bentman* places the instant case outside of its strict application. Accordingly, Appellants' first argument—that the instant case had already

been decided by *Bentman*—entitles them to no relief.

The trial court did not reach the issue of whether, considering *Bentman* or any other authority, the Rule is invalid on its face or as applied to Gordon. Rather, it held that Johnson lacked standing to litigate Count II of the complaint after Gordon discontinued her claims. We consider this issue mindful of the following.

"In Pennsylvania, a party seeking judicial resolution of a controversy must establish as a threshold matter that he [or she] has standing to maintain the action.... Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." *Bricklayers of Western Pennsylvania Combined Funds, Inc. v. Scott's Development Co.*, 41 A.3d 16, 22 (Pa.Super.2012), *appeal granted on other grounds*, —— Pa. ——, 58 A.3d 748 (2012) (internal quotations and citations omitted).

[W]here a person is not adversely affected in any way by the matter challenged, he is not aggrieved and thus has no standing to obtain a judicial resolution of that challenge. Moreover, in order to be aggrieved, a party must show that it has a substantial, direct and immediate interest in the claim sought to be litigated. We have defined these requirements as follows: a "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law; a "direct" interest requires a showing that the matter complained of caused harm to the party's interest; an "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by

the statute or constitutional guarantee in question. Additionally, an association, as a representative of its members, has standing to bring a cause of action even in the absence of injury to itself if the association alleges that at least one of its members is suffering immediate or threatened injury as a result of the challenged action and the members of the association have an interest in the litigation that is substantial, direct, and immediate.

*Pennsylvania Medical Soc. v. Department of Public Welfare of Com.*, 614 Pa. 574, 39 A.3d 267, 278 (2012) (internal quotations and citations omitted).

In the instant case, the trial court held that once Gordon had been reinstated to her position and withdrew as a plaintiff in the lawsuit, Count I (seeking Gordon's reinstatement) of the complaint was moot. Appellants do not dispute this determination. What Appellants dispute is the trial court's holding that Johnson, after Gordon's reinstatement and withdrawal, lacked standing to pursue Count II of the complaint (declaratory and injunctive relief). *See* Appellants' Brief at 18 ("Gordon's claim for reinstatement was moot, but not Johnson's challenge to the rule used by Appellees to remove Gordon from party office, and still threatening the integrity of future elections.").

In its opinion, the trial court addressed Johnson's standing as follows.

The question ... was whether there remained any basis to entertain Johnson's claims once Gordon withdrew from the action. [Appellees] argue that since Gordon got the relief she sought when she was reinstated to the ward committee position, Johnson is unable to demonstrate that she had any remaining stake in the action sufficient to confer standing. Johnson responds that her "clear personal interest" in her rights as

a voter stands apart from Gordon's interests as a committee person and that she has a right to a legal determination that she was injured as a result of [Appellees'] actions. Johnson contends further since there is no evidence that the Party has abandoned The Rule this court must retain jurisdiction to have the legality of [Appellees'] practices settled so that her interests will not be infringed upon in the future. In support of her response to [Appellees'] motion for summary judgment, [Johnson] appended an affidavit in which she declared that:

> This case is not just about Tracey Gordon. It is about my right to vote and the right of other voters who voted for her. Even if Ms. Gordon can no longer serve, because of her employment with the City of Philadelphia, I am concerned that other hardworking, outspoken, independent candidates like Ms. Gordon will be hesitant to step forward in the future to represent me if Party officials get away with what they did to Ms. Gordon.

The [trial] court agrees with [Appellees] that Johnson's statement of interest does not meet the established test for standing.... Against this standard, Johnson must show that she is aggrieved because she has a substantial, direct, and immediate interest in the outcome of the litigation that surpasses the common interest of all citizens in procuring obedience to the law....

Johnson argues that she may suffer injury the next time she votes for a candidate who wins the election, who is installed as a committee person, and who later is removed from his or her seat pursuant to The Rule. She contends that since the otherwise illegal Rule remains on the books and since The Party has not disavowed it, this is a proper case in which to confer standing because it is likely that prospective candidates and voters stand to be adversely affected in the future. Johnson's argument rests on the erroneous assumption that the Rule was invalidated in the 1966 case of *Bentman,* [*supra*], in which plaintiffs had been removed as party committee persons from the positions to which they were elected because of their conduct before they were elected. It is clear in *Bentman* that the [C]ourt looked with great disfavor on any rule that may operate to nullify the choice of electors, even where the rule is of a private entity like a political party. The fact remains, however, that [*Bentman*] decided only that the lower court erred in dismissing the matter for lack of jurisdiction. Instead, it concluded that although trial courts historically had been loath to hear intra-political party controversies, it henceforth shall hear those disputes because "the complete privacy in nature of party organizations recognized by our courts in the past no longer exists." The [C]ourt remanded the matter for further consideration on the merits. It did not, nor does this court now, reach the question whether The Rule is unlawful on its face or as applied to any particular set of facts before it; it also does not reach the concomitant question whether [the trial] court is required to determine if [Appellees] are likely to violate the law in the future. The only question here is whether Johnson has a personal stake in the outcome sufficient to sharpen the issues to be decided. [The trial] court finds that Johnson does not because her interest is remote and speculative.

Trial Court Opinion, 1/16/2013, at 4–7 (some citations and emphasis omitted).

Johnson makes much effort to show that she had standing at the time the action

was initiated.[1]  *See* Appellants' Brief at 18–21. Johnson claims that the trial court "appears to have confused standing and mootness, two distinct concepts," when it held that Johnson lacked standing after Count I was mooted and Gordon discontinued her claims. *Id.* at 25.

Johnson fails to recognize that while standing and mootness may be distinct concepts, they are related. "Mootness poses a question of justiciability and is related to the concepts of standing and ripeness; all three are concerned with the proper timing of litigation. Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Town of McCandless v. McCandless Police Officers Ass'n*, 587 Pa. 525, 901 A.2d 991, 1002 (2006) (internal quotation omitted). Specifically addressing mootness, our Supreme Court has explained:

> The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that an actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed.

*Pap's A.M. v. City of Erie*, 571 Pa. 375, 812 A.2d 591, 600 (2002) (quoting *In Re Cain*, 527 Pa. 260, 590 A.2d 291, 292 (1991)). Another way of looking at it is that mootness and ripeness are "the time dimensions of standing. Each assumes that an asserted injury would be adequate; ripeness then asks whether an injury that has not yet happened is sufficiently likely to happen, and mootness asks whether an injury that has happened is too far beyond a useful remedy." *Town of McCandless*, 901 A.2d at 1002 (quoting 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 3531.12, at 50 (1984)).

Applying these concepts to the instant case, it is clear that the claims as to Gordon's removal were moot and claims as to prospective use of the Rule were not ripe. When the candidate she voted for was prevented from holding her position on the committee by virtue of the Rule, Johnson had a direct, immediate, and substantial interest in the outcome of the litigation above and beyond the interest of all citizens. After Appellees reversed their decision and reinstated Gordon, and Gordon resigned to take another job, Johnson's interest became indirect, hypothetical, and no different than that of every other citizen in seeing his or her chosen candidates serve in their elected positions.

The legality of the Rule on its face simply cannot be decided in a vacuum. Our Supreme Court in *Bentman* did discuss some instances in which the Rule could be unconstitutionally applied. *See Bentman*, 218 A.2d at 266–270. However, we can certainly envision situations in which the Rule might be utilized in a manner consistent both with *Bentman* and the Election Code's provision that "duly elected or appointed members [of district committees] shall be subject to the control, direction and supervision of the political committee of which they are members."[2]  25 P.S.

---

1. No one disputes that Johnson had standing before Gordon's reinstatement, and we need not analyze the issue further.

2. For example, if a serving Democratic committeeperson disrupted committee meetings by filibustering about the superiority of the American Nazi party, use of the rule to remove that committeeperson would seem apt.

§ 2842. The determination is necessarily fact-specific and not subject to litigation without those facts.

In sum, Johnson states no presently-redressable injury as to the use of the Rule to remove Gordon; that claim is moot. The claim as to an injury that might be sustained by Johnson if the Rule is used again to remove some committeeperson at some time in the future under some unknown set of circumstances is too vague and hypothetical to adjudicate; that claim is unripe. Accordingly, the trial court correctly held that Johnson lacked standing to continue the action and properly granted Appellees' motion for summary judgment.

■ For the same reasons, the trial court properly denied PDPC's petition to intervene in the action after Count I became moot. The claims related to Gordon's removal were just as moot for PDPC's members, including Gordon, as they were for Johnson. Any of PDPC's claims as to possible future use of the Rule were just as unripe as Johnson's. Therefore, even if PDPC is correct that the trial court did not follow proper procedure in ruling upon the petition without holding a hearing,[3] the error was harmless.

Finally, Appellants argue that even if the claims as to Gordon's removal are moot, this Court should nonetheless consider its merits because it is capable of repetition, yet evading review. Appellants' Brief at 27.

> Even if a claim becomes moot, we may still reach its merits if the issues raised in the case are capable of repetition, yet likely to continually evade appellate review. *See also* ... *Commonwealth v. Bernhardt,* [359 Pa.Super. 413, 519 A.2d 417, 420 (1986)] (holding exception to mootness doctrine exists where "(1) the question involved is capable of repetition but likely to evade review, or (2) the question involved is one of public importance"). Therefore, if the issues raised by an appeal are "substantial questions" or "questions of public importance," and are capable of repetition, yet likely to evade appellate review, then we will reach the merits of the appeal despite its technical mootness.

*In re Estate of Border,* 68 A.3d 946, 953–954 (Pa.Super.2013) (quoting *In re Duran,* 769 A.2d 497, 502 (Pa.Super.2001)) (some citations omitted).

Certainly the issues raised by Appellants are of public importance. However, we are not persuaded that they are likely to avoid review if they are repeated. There is no indication that, should the Rule be utilized again to remove another committeeperson in circumstances similar to those under which Gordon was removed, such committeepersons will always have their claims mooted by reinstatement and/or acceptance of another job which prohibits serving on the committee.

The claim is moot as to Gordon's removal. Should any PDPC member suffer a concrete injury as a result of the Executive Committee's use, or actual threat of use, of the Rule to remove a committeeperson, that committeeperson, or anyone who voted for him or her, can file a new action with a substantial, direct, and immediate interest in the outcome of the litigation. Unless and until that happens, the claim is simply not ripe.

■ As a final matter, we note that, although some issues in this case related to provisions of the Election Code and the right of an elected committeewoman to her office, we have determined that jurisdic-

---

**3.** *See* Appellants' Brief at 27 (citing Pa.R.C.P. 2329).

tion over this appeal properly lies with this Court.

"The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court." 42 Pa.C.S. § 724. Pursuant to 42 Pa.C.S. §§ 762(a)(4)(i)(C) and 722(2), respectively, the Commonwealth Court "has jurisdiction to hear appeals involving issues arising from the election process, while the Supreme Court has jurisdiction to hear appeals in matters challenging a candidate's right to hold public office, that is, the basic qualifications of the candidate to hold public office." *Matter of Warren*, 692 A.2d 1178, 1181 (Pa. Cmwlth.1997). "Public office" in this context means "an elective or appointive position in which the incumbent is exercising a governmental function which involves a measure of policy making and which is of general public importance." *Appeal of Bowers*, 440 Pa. 310, 269 A.2d 712, 717 (1970). "[W]hile the term 'right to public office' includes questions of qualification, eligibility, regularity of the electoral or appointive process and other preconditions to the holding of office, it does not normally include an appraisal of the sufficiency of evidence or other irregular aspects of a tribunal which discharges an officeholder from his position." *Commonwealth v. Spano*, 549 Pa. 501, 701 A.2d 566, 567 (1997).

Although the instant appeal tangentially involves an election, we were not required to apply, interpret, or enforce the Election Code in reaching our holding. Further, the issues involved did not involve the right to hold public office within the meaning of 42 Pa.C.S. § 722(2), as the challenge was to a discharge from office rather than preconditions to the holding of office. *See Spano, supra.* Therefore, this Court has jurisdiction over this appeal under 42 Pa. C.S. § 742.

Even if we are incorrect and interpretation of the Election Code was sufficiently at issue to invoke the Commonwealth Court's jurisdiction, we have acted within our discretion under the Rules of Appellate Procedure in choosing, in the interests of judicial economy, to consider the appeal. As we have explained, Rule 741 provides as follows.

**Rule 741. Waiver of Objections to Jurisdiction**

(a) General rule. The failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the last day under these rules for the filing of the record shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of law vesting jurisdiction of such appeal in another appellate court.

Pa.R.A.P. 741(a). Ordinarily, this rule allows this Court to accept jurisdiction of an appeal that belongs in another appellate court when the parties do not object.

*Commonwealth v. Jackson*, 858 A.2d 627, 630 (Pa.Super.2004). *See also Schultz v. City of Philadelphia*, 314 Pa.Super. 194, 460 A.2d 833, 834 (1983) (exercising Superior Court's discretion, in the interests of judicial economy, to decide appeal of civil matter involving local government matters rather than transfer it to Commonwealth Court, where no objection to Superior Court's jurisdiction was made). Appellees did not object to this Court's jurisdiction, and judicial economy was served by our

deciding the case after it was filed, briefed, and argued before us.

Orders affirmed.

Judge BOWES files a Dissenting Opinion.

## DISSENTING OPINION BY BOWES, J.:

I respectfully dissent from the majority's decision to accept jurisdiction over this appeal and would transfer this case to the Commonwealth Court.

The present matter admittedly involves the operation of the Democratic Party of the City and County of Philadelphia County (the "Party") and whether Tracy L. Gordon was properly removed from her elected position as a member of the 40th Ward Committee. Appellant claims that the Party rule at issue violates 25 Pa.C.S. § 2842, an enactment contained in the Election Code. Therefore, exclusive jurisdiction over this matter was vested by our legislature in the Commonwealth Court pursuant to 42 Pa.C.S. § 762, which provides in pertinent part:

(a) **General rule.**—Except as provided in subsection (b), [which is inapplicable herein] the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases:

. . . .

(4) Local government civil and criminal matters.

(i) All actions or proceedings arising under any municipality, institution district, public school, planning

or zoning code or under which a municipality or other political subdivision or municipality authority may be formed or incorporated or where is drawn in question the application, interpretation or enforcement of any:

(C) statute relating to elections, campaign financing or other election procedures.

As our sister court has observed, this provision confers jurisdiction upon it to hear litigation involving elections matters and the Election Code. *Dayhoff v. Weaver,* 808 A.2d 1002, 1005–06 (Pa.Cmwlth.2002) (footnote omitted; emphasis in original) ("Section 762(a)(4)(i)(C) of the Judicial Code provides expressly that the Commonwealth Court shall have **exclusive** jurisdiction over appeals from the trial courts in cases involving elections or election procedures."). Indeed, all cases, since the Commonwealth Court was created, that involve elections emanate from the Commonwealth Court or our Supreme Court on appeal from the Commonwealth Court. The present matter involves an election and election procedures and should be decided by the Commonwealth Court.

Neither party has objected to our exercise of jurisdiction. Our legislature has outlined that if an appellee does not object to the improper jurisdiction, "unless the appellate court otherwise orders," then jurisdiction will vest in the court in which the appeal was originally, albeit improperly, filed. 42 Pa.C.S. § 704(a);[1] *see also Rosenberg v. Holy Redeemer Hospital,* 351 Pa.Super. 399, 506 A.2d 408 (1986) (accept-

---

1. That section states:

The failure of an appellee to file an objection to the jurisdiction of an appellate court within such time as may be specified by general rule, shall, **unless the appellate court otherwise orders,** operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of this title, or of any general rule adopted pursuant to section 503 (relating to reassignment of matters), vesting jurisdiction of such appeal in another appellate court.

42 Pa.C.S. § 704(a) (emphasis added).

ing jurisdiction over appeal where Commonwealth Court had exclusive jurisdiction but where appellee did not object).

However, we can decide, as outlined in § 704(a), to transfer a case, regardless of whether an appellee has objected to where the appeal was filed. *See Trumbull Corp. v. Boss Construction Inc.*, 747 A.2d 395, 399 n. 4 (Pa.Super.2000). When we decide whether to retain an appeal,

> we must balance the interests of the parties and matters of judicial economy against other factors such as: (1) whether the case has already been transferred, *Karpe v. Borough of Stroudsburg*, 315 Pa.Super. 185, 461 A.2d 859 (1983); (2) whether our retention will disrupt the legislatively ordained division of labor between the intermediate appellate courts; and (3) whether there is a possibility of establishing two conflicting lines of authority on a particular subject. *Newman v. Thorn*, 359 Pa.Super. 274, 518 A.2d 1231 (1986). Moreover, each transfer should be decided on a case-by-case basis.

*Id.* at 399.

In my opinion, consideration of these factors compels that we transfer this case to the Commonwealth Court. This appeal has not been previously transferred, and our retention of it would upset the legislature's decision to vest exclusive appellate jurisdiction in the Commonwealth Court over litigation involving elections. Further, this Court has no body of case law concerning election cases and the questions of either standing or mootness in that context. This Court simply has no experience with election contests and the majority has risked rendering a decision that may conflict with the body of law existing in the Commonwealth Court as to the issues it addresses. I consider it inappropriate for this Court to decide a case involving an internal rule of the Party and

whether it conflicts with the Election Code. I would transfer this appeal to the Court with the experience and skill-set to handle the matter expertly. *Id.; see also Dynamic Sports Fitness Corp. of America, Inc. v. Community YMCA of Eastern Delaware County*, 751 A.2d 670 (Pa.Super.2000). Hence, I respectfully dissent.