J-A26022-15 & J-A26023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MICHAEL A. JARVIE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CUMULUS MEDIA, INC., | |
| Appellant | No. 1891 MDA 2014 |

Appeal from the Order Entered October 24, 2014
in the Court of Common Pleas of Berks County
Civil Division at No.: 14-20186

| | |
|---|---|
| MICHAEL A. JARVIE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CUMULUS MEDIA, INC., | |
| Appellant | No. 374 MDA 2015 |

Appeal from the Order Entered February 5, 2015
in the Court of Common Pleas of Berks County
Civil Division at No.: 14-20186

BEFORE:  FORD ELLIOTT, P.J.E., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                   **FILED DECEMBER 08, 2015**

In these two related appeals, Appellant, Cumulus Media, Inc., appeals

from the trial court's orders of October 24, 2014 granting the motion of

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellee, Michael A. Jarvie, for a preliminary injunction, and February 5, 2015, directing Appellee to deposit $500.00 in cash in lieu of a bond in this declaratory judgment action.[1]  For the reasons discussed below, we dismiss these appeals as moot.

We take the underlying facts and procedural history in this matter from the trial court's January 23, 2015 and April 1, 2015 opinions and our independent review of the certified record.

> In 2003, [Appellee] worked for Citadel Broadcasting Company (Citadel) in Wilkes-Barre, Pennsylvania.  On May 7, 2007, Citadel hired [Appellee] as a General Sales Manager for its radio stations WQXA-FM, WMHX-FM, WCAT-FM, WIOV-FM, and WIOV-AM in Harrisburg, Lancaster, Reading, and York, Pennsylvania.  [Appellee's] duties included supervising the sales efforts through the sale of advertising time, supervising and developing account executives and assistants, attending station meetings, working with the programming and promotion departments to maximize sales opportunities, and [managing] the budgets of the stations' sales departments.  The general manager supervised him.  [Appellee's] salary was $45,000.00 per year with the potential for bonuses.  From 2007 to 2010, [Appellee] typically earned $85,000.00 to $99,000.00 per year, including bonuses.
>
> Prior to [Appellee's] employment as the sales manager with Citadel, [Appellee] executed a Sales Manager Standard Agreement (Agreement).  This Agreement contained, *inter alia*, the following provisions which are the subject of this dispute:
>
> > 9. (b) You will not enter into any employment or other agreement to perform services as an account executive or sales manager or perform any other services set forth paragraph 1 hereof for any

_____

[1] These interlocutory orders are appealable as of right.  ***See*** Pa.R.A.P. 311(a)(4).

- 2 -

radio station with a transmission tower located within fifty (50) miles of the transmission tower of Station for a period of one (1) year after the termination of your employment with Company.

9. (c) You will not have any contact with and will not solicit clients or customers of Station for a period of one (1) year after the termination of your employment with Station for the purpose of selling airtime for any radio or television broadcaster.

(Exhibit No.1).

In 2011, Citadel entered into agreement to merge with [Appellant], Cumulus Media, Inc. The merger was completed by September 2011. [Appellee] was paid a $20,000.00 retention bonus to stay during the transition period from September 20, 2011 through March 20, 2012. He signed a separate agreement for this bonus. This agreement does not contain a non-solicitation or non-competition clause.

In November 2011, [Appellant] began changing the terms and conditions of [Appellee's] employment. [Appellee] was demoted to account manager with a concomitant reduction in salary and duties. [Appellee] was no longer in charge of inventory or helping with pricing or doing anything in a managerial capacity. He was not eligible to receive bonuses. He no longer had a base salary and received his compensation based entirely on commissions. When the merger was completed and [Appellee] became an employee of [Appellant], [Appellee] had to give some of his clients to other salespeople because the clients had been clients of both Citadel and [Appellant] before the merger.

In February 2014, [Appellant's] new regional manager assumed the supervision of the York-Lancaster cluster. He took all managerial responsibility and privileges away from [Appellee]. In May 2014, the marketing manager determined that [Appellee] was earning too much money and took away some of [Appellee's] existing billing accounts. Although other employees who were demoted or had changes in compensation signed new agreements with new restrictive covenants, [Appellant] never requested [Appellee] to execute a new agreement.

On October 1, 2014, [Appellee] accepted a position with IHeartMedia as a Local Sales Manager. This radio station is in one of [Appellant's] markets. His responsibilities are to supervise, develop, and grow a team for its radio stations in Berks County, Pennsylvania. [Appellee] will also help price the inventory and work on projects to help increase the profitability of the station.

On October 1, 2014, [Appellee] gave [Appellant] his required two weeks' notice of intent to resign. On October 2, 2014, [Appellant] notified [Appellee] that his resignation was accepted and asked him to leave immediately. [Appellant] then contacted IHeartMedia and indicated that it would seek to enforce the non-competition and non-solicitation provisions of the Agreement if lHeartMedia permitted [Appellee] to work for it. [Appellee] filed this action for declaratory judgment and sought a preliminary injunction to preclude [Appellant] from interfering with his ability to obtain new employment and to procure business.

Ron Giovanniello is the regional vice president in Pennsylvania for [Appellant]. He is responsible for all of [Appellant's] operations the markets of Harrisburg, York, Lancaster, Reading, Allentown, and Wilkes-Barre/Scranton, Pennsylvania. lHeartMedia is [Appellant's] biggest direct competitor in the business. The specific station where [Appellee] worked for [Appellant] was a country station. The IHeartMedia station where [Appellee] sought employment is a contemporary hit station. Mr. Giovanniello testified that the only reason that [Appellant] has interest in [Appellee] is that he can transfer accounts that will affect [Appellant's] revenue. Mr. Giovanniello does not have noncompete agreement with [Appellant].

(Trial Court Opinion, 1/23/15, at 1-4).

On October 22, 2014, the trial court held a hearing on Appellee's request for a preliminary injunction. On October 24, 2014, the trial court granted the request and issued a preliminary injunction. On November 7, 2014, Appellant filed the appeal in case 1891 MDA 2014. On November 12, 2014, the trial court directed Appellant to file a concise statement of errors

- 4 -

complained of on appeal. *See* Pa.R.A.P. 1925(b). On December 1, 2014, Appellant filed a timely Rule 1925(b) statement, raising, for the first time, the issue that the trial court erred by failing to require that Appellee post a bond as required by Pennsylvania Rule of Civil Procedure 1531(b). (*See* Appellant's Statement of Errors Complained of on Appeal, 12/01/15, at 2 ¶ 6).

On December 11, 2014, the trial court issued an order scheduling a hearing with respect to the bond issue. The hearing took place on January 23, 2015. Further, on January 23, 2015, the trial court issued an opinion with respect to case 1891 MDA 2014. *See* Pa.R.A.P. 1925(a). On February 5, 2015, the trial court issued an order directing Appellee to pay $500.00 cash in lieu of a bond. On February 24, 2015, Appellant filed a notice of appeal. On February 25, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). On March 16, 2015, Appellant filed a timely Rule 1925(b) statement. On April 1, 2015, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review in case 1891 MDA 2014.

> A. Whether the trial court erred in finding that Appellee met his burden of proof for injunctive relief because Appellee failed to establish all of the requisite elements for a preliminary injunction?

1. Whether the trial court erred in granting Appellee's request for injunctive relief because Appellee failed to prove "irreparable harm" as his claim is compensable by money damages?

2. Whether the trial court erred in granting Appellee's request for injunctive relief because greater injury resulted from granting the injunction, and the issuance of an injunction substantially harmed Appellant?

3. Whether the trial court erred in granting Appellee's request for injunctive relief because the preliminary injunction did not properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct?

4. Whether the trial court erred in granting Appellee's request for injunctive relief because Appellee did not prove that he is likely to prevail on the merits?

B. Whether the injunction issued by the trial court is null and void because the trial court failed to require the Appellee to post a bond which would cover damages that are reasonably foreseeable?

C. Whether the trial court erred by ruling in its October 2[4], 2014 order that "the restrictive covenants set forth in the sales manager standard agreement, pl. ex. 1, is (sic) not binding on [Appellee]" because the finding was the ultimate issue Appellee sought to have determined through the declaratory judgment action, the matter is properly the subject of arbitration, and Appellant did not have a full and fair opportunity to conduct discovery and Appellant did not have a full and fair opportunity to be heard on that subject?

(Appellant's Brief, Case 1891 MDA 2014, at 4-5) (unnecessary capitalization and footnotes omitted).

On appeal, Appellant raises the following questions for our review in case 374 MDA 2015.

A. Whether the trial court erred in entering its [February 5], 2015 order by imposing a $500.00 cash deposit requirement with regard to the injunction issued on October 2[4], 2014, because the [February 5], 2015 order did not cure the defect of failing to require a bond at the time the injunction was entered, rendering the injunction null and void?

B. Whether the trial court erred in entering its [February 5], 2015 order by only requiring a $500.00 cash deposit, because the order fails to impose a bond in a sufficient amount [that] will cover [Appellant's] damages that are reasonably foreseeable?

(Appellant's Brief, Case 374 MDA 2105, at 4) (unnecessary capitalization omitted).

On appeal, Appellant contends that the evidence was insufficient to support the trial court's injunction.

> Our standard of review, though nominally characterized as an abuse of discretion, is highly deferential:

>> We recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the trial court.

> This Court set out the reasons for this highly deferential standard of review almost a hundred years ago:

>> It is somewhat embarrassing to an appellate court to discuss the reasons for or against a preliminary decree, because generally in such an issue we are not in full possession of the case either as to the law or testimony—hence our almost invariable rule is to simply affirm the decree, or if we reverse it to give only a brief outline of our reasons,

- 7 -

reserving further discussion until appeal, should there be one, from final judgment or decree in law or equity.

*Martinez v. Christian Fin. Mgmt. Corp.*, — A.3d —, 2015 WL 5854144, at *4 (Pa. Super. filed Oct. 7, 2015) (citations omitted).

Prior to addressing their merits, we must first resolve whether these appeals are moot.

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law[.] In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

> * * *

> Nevertheless, this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

*In re R.D.*, 44 A.3d 657, 680 (Pa. Super. 2012), *appeal denied*, 56 A.3d 398 (Pa. 2012) (citations and quotation marks omitted).

Here, the dispute centers on the enforceability of a do-not-compete clause. That clause was enforceable for one year after termination from the company. (*See* Trial Ct. Op., 1/23/15 at 2). Appellant terminated Appellee on October 2, 2014. (*See id.* at 3). Thus, the do-not-compete clause expired on October 2, 2015. Therefore, because Appellant can no longer

enforce the clause, the issue is moot. ***See Gordon v. Phil. County Dem. Exec. Comm.***, 80 A.3d 464, 473 (Pa. Super. 2013) (finding third-party challenges to use of particular rule to remove committee member moot where committee reinstated member); ***R.D.***, ***supra*** at 680 (finding challenge to juvenile court judge's remarks at dispositional hearing moot where juvenile was no longer in placement); ***Phil. Lodge No. 5, Frat. Order of Police v. Phil. Bd. of Pensions and Ret.***, 606 A.2d 603, 605-06 (Pa. Cmwlth. 1992), *appeal denied*, 615 A.3d 1314 (Pa. 1992) (appeal from denial of preliminary injunction to prevent pension board from buying short-term loan notes was moot where board had already paid back loans and law allowing their purchase had expired);[2] ***Int'l. Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers, Gen. Warehousemen and Employees Union Local v. Borough of West Mifflin***, 411 A.2d 261, 262 (Pa. Cmwlth. 1980) (appeal from grant of preliminary injunction restraining union from continuing strike moot where strike settled during pendency of appeal).

Moreover, our review of the record demonstrates that none of the exceptions applies. ***See In re R.D.***, ***supra*** at 680. With respect to the important public issue exception, the Pennsylvania Supreme Court has

_____

[2] While decisions of the Commonwealth Court are not binding on us, they may serve as persuasive authority. ***See Commonwealth v. Ortega***, 995 A.2d 879, 885 (Pa. Super. 2010), *appeal denied*, 20 A.3d 1211 (Pa. 2011).

explained that this "exception is generally confined to a narrow category of cases." **Bottomer v. Progressive Cas. Ins. Co.**, 859 A.2d 1282, 1285 (Pa. 2004) (citation omitted) (holding issue of whether declaratory judgment actions and arbitrations can proceed simultaneously on same subject is not sufficiently important to escape mootness).

This matter is an interpersonal dispute revolving around the enforcement of a do-not-compete clause in the contract of a single former employee. It involves no issue of public importance. **Cf. In re Estate of Border**, 68 A.3d 946, 954 (Pa. Super. 2013), *appeal denied*, 77 A.3d 637 (Pa. 2013) (finding that appeal from denial of preliminary injunction staying order removing guardian was technically moot following death of patient, but holding it concerned matter of public importance, the removal of life support from incapacitated patient).

With respect to the repetition exception, we have stated, "Class actions aside, a case is capable of repetition, yet evading review when (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." **Commonwealth v. Buehl**, 462 A.2d 1316, 1319 (Pa. Super. 1983) (internal quotation marks and citations omitted).

In the instant matter, we see nothing that makes it capable of repetition and avoiding review. As noted above, there are no issues of

public importance in this matter such that a decision here will have implications for future actions. In addition, because Appellant no longer employs Appellee, the question of the enforceability of a clause in the employment contract between them will not arise again. While the do-not-compete clause did contain a time limitation, we see no reason why such a limitation might prevent future review, particularly given the unique set of circumstances[3] in these cases, which caused multiple proceedings in the trial court, resulting in two appeals, and given that the decision issued depended upon the particular facts of Appellee's case. *See Border*, *supra* at 954 (issue of removal of life support from incapacitated person capable of repetition yet evading review); *see also Harris v. Rendell*, 982 A.2d 1030, 1037 (Pa. Cmwlth. 2009), *affirmed*, 992 A.2d 121 (Pa. 2010) (finding repetition exception did not apply where appellant did not take advantage of procedures permitting immediate or expedited review of preliminary injunctive relief).

Lastly, Appellant will not suffer any detriment without this Court's decision. Appellee sought injunctive relief to prevent Appellant from enforcing the do-not-compete clause, and that clause has now expired; Appellant cannot enforce the clause now. This matter is simply not the type

---

[3] Those circumstances include the fact that Appellant did not draft the do-not-compete clause in this matter, rather it was part of the contract between Appellee and Citadel and the record indicates that not all contracts drafted by Appellant contain a do-not-compete clause. (*See* Trial Ct. Op., at 1-3).

of case where the Pennsylvania courts have found detriment.  *See e.g.*
***Com. Dept. of Envtl. Prot. v. Cromwell Tp., Huntingdon County***, 32
A.3d 639, 652 (Pa. 2011) (appeal by township of contempt order sentencing
three township supervisors to jail was not mooted by resignation of two
supervisors and completion of sentence by third because township and any
new supervisors were still subject to underlying enforcement order); ***Chruby***
***v. Dept. of Corr.***, 4 A.3d 764, 771 (Pa. Cmwlth. 2010) (finding appeal of
grant of preliminary injunction requiring Department of Corrections to
transport prisoner for medical treatment technically moot because prisoner
received treatment sought, but holding DOC would suffer harm without
appellate review because prisoner routinely sought and received *ex parte*
injunctive relief and DOC never had opportunity to respond to prisoner's
allegations); ***Haas v. W. Shore School Dist.***, 915 A.2d 1254, 1258 (Pa.
Cmwlth. 2007) (expelled student would suffer detriment without appellate
review even though expulsion completed because it remained on permanent
record).

Again, we note that this Court has observed, "An issue before a court
is moot if in ruling upon the issue the court cannot enter an order that has
any legal force or effect." ***Rivera v. Pa. Dept. of Corr.***, 837 A.2d 525, 527
(Pa. Super. 2003), *appeal denied*, 857 A.2d 680 (Pa. 2004) (citation
omitted).  Appellee sought to prevent enforcement of the do-not-compete
clause.  The clause has since expired, and any ruling by this Court would

have no force or effect.  **See Gordon**, **supra** at 473; **R.D.**, **supra** at 680.

The issue herein is moot, and the appeals must be dismissed.

Appeals dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/8/2015