J-A26008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RICHARD MATLOW, JAMES J. BYRNE, THOMAS GLASGOW, MARY ELLEN GLASGOW, ROSEMARIE RIZZO PARSE, ANNA CUNNINGHAM, JAMES H. LOGAN, AND KATHLEEN M. LOGAN | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| BRIEN MARSH, MOUNIR KASHKOUSH, JOHN L. HORNER, ROBERT C. JAZWINSKI, SCOTT F. SNEDDON, TODD R. CARLSON, AND STEVEN B. SCHWARZWAELDER, IN THEIR CAPACITY AS DIRECTORS OR MEMBERS OF THE ASSOCIATION COUNCIL OF GATEWAY TOWERS CONDOMINIUM ASSOCIATION, INC. | : : : : : : : : : : : : | |
| v. | : : : | |
| GATEWAY TOWERS CONDOMINIUM ASSOCIATION, INC. | : : : | |
| Appellant | : : : | |
| v. | : : : : : | |
| GATEWAY TOWERS EXECUTIVE OFFICE CONDOMINIUM OWNERS ASSOCIATION | : : : | NO. 722 WDA 2017 |

J-A26008-18

Appeal from the Order Entered May 11, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): No. GD-17-003480

BEFORE: BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JANUARY 07, 2019**

Appellant, Gateway Towers Condominium Association, Inc. ("GTCA"),

appeals from the trial court's order granting Appellees', Richard Matlow, James

J. Byrne, Thomas Glasgow, Mary Ellen Glasgow, Rosemarie Rizzo Parse, Anna

Cunningham, James H. Logan, and Kathleen M. Logan (collectively referred to

herein as "Appellees"), motion for preliminary injunction.  We affirm.

Appellees are residential unit owners within the Gateway Towers

Condominium and members of GTCA, a residential condominium association.

***See*** Trial Court Opinion ("TCO"), 8/16/2017, at 2; GTCA's Brief at 10.[1]  GTCA

_____

[1] We briefly identify the other parties listed in the caption.  We note that Intervenor, Gateway Towers Executive Office Condominium Owners Association (referred to herein as the "Commercial Association"), filed a petition to intervene on March 14, 2017, which the trial court subsequently granted.  The Commercial Association has filed a brief with this Court.  As for the Commercial Association's connection to this litigation, it explains that "[a]lso located within the same Gateway Towers building is a separate condominium of units on Floors 1, 2, 3 and 27, known as the Gateway Towers Executive Office Condominium and for which [the Commercial Association] is the governing owners' association."  Commercial Association's Brief at 4.

Brien Marsh, Mounir Kashkoush, John L. Horner, Robert C. Jazwinski, Scott F. Sneddon, Todd R. Carlson, and Steven B. Schwarzwaelder are (or possibly were) involved in this case in their capacity as directors or members of the association council of GTCA.  GTCA's counsel represents that they have been dismissed from this case since GTCA filed its appeal.  ***See*** Response to Rule to Show Cause, 6/13/2018, at 1 (unnumbered pages).  GTCA's counsel has

- 2 -

is governed by Articles of Incorporation, a Declaration of Condominium, and

a Code of Regulations (collectively referred to herein as the "Condominium

Documents"). ***See*** TCO at 5. The Code of Regulations sets forth, in pertinent

part, the following:

> By the Association – Common Elements. Except as provided in Subsection 5.8 of the Declaration [relating to the amendment of plans by the Sponsor, Gateway Capital, Inc.,[2]] and except for repairs and maintenance of the existing improvements, after the completion of the improvements, including the Common Elements, contemplated by the Sponsor, there shall be no alteration or further improvement of the Common Elements without the prior approval in writing of the Owners of not less than 75% of the Condominium Parcels and by Institutional Mortgagees holding Institutional Mortgages encumbering not less than 75% of the Condominium Parcels. Any such alteration or improvement shall not interfere with the rights of any Unit Owners without their consent.

GTCA's Exhibit F (Code of Regulations § 15.2(a)).

Further, the Articles of Incorporation provide, *inter alia*, that GTCA has

the power:

> To maintain, repair, replace and operate the Condominium Property, which shall include the irrevocable right to access each Unit from time to time during reasonable hours as may be

---

asked us to amend the caption and docket to reflect their dismissal; however, it appears counsel has not filed a new application to amend, including a copy of the trial court's order amending the case caption, as directed in our June 18, 2018 order. ***See*** Motion to Correct Docket, 5/25/2018, at 3 (unnumbered pages) (requesting that we "correct the docket identifying [GTCA] as the only Appellant in this action, and modify[] the caption" to exclude the directors or members of GTCA's council); Order, 6/18/2018, at 1 (single page) ("If the trial court permits amendment of the caption, counsel may file a new application in this Court and shall include a copy of the trial court's order amending the case caption."). Thus, we decline to do so.

[2] The parties do not argue that this Subsection 5.8 exception applies.

necessary for such maintenance, repair, or replacement of any Common Elements therein or accessible therefrom, or for the making of emergency repairs therein to prevent damage to the Common Elements or to another Unit or Units.

GTCA's Exhibit A (Articles III(C)(3)).

In early 2017, the board of GTCA proposed pursuing four construction projects, which the trial court identified as follows: "(1) replacement of the existing HVAC system[] at a cost of more than $14 million; (2) replacement of all of approximately 1[,]500 windows at a cost of about $5.3 million; (3) installation of metal panels at a cost of $1.6 million; and (4) installation of new waste stack equipment at a cost of several hundred thousand dollars." TCO at 5 (citation omitted). We refer to these proposals collectively as the "Infrastructure Plan." On January 24, 2017, the GTCA board presented the Infrastructure Plan to the unit owners. *See* GTCA's Brief at 16; Appellees' Brief at 5-6; Commercial Association' Brief at 7. On February 21, 2017, the GTCA board adopted the Infrastructure Plan and passed corresponding resolutions but, before doing so, did not attempt to obtain the approval of the unit owners or the institutional mortgagees. *See* GTCA's Brief at 16-17; Appellees' Brief at 5-6; Commercial Association's Brief at 7.

Appellees subsequently filed a complaint against GTCA and its seven board members for declaratory judgment, breach of fiduciary duty, negligence, accounting, and preliminary and permanent injunctive relief. In short, Appellees sought "to stop the unauthorized expenditure by [GTCA] of $21.1 million in owner funds to make unauthorized alterations and improvements to the Condominium Common Elements without required

- 4 -

owner consent." *See* Amended Complaint, 4/10/2017, at ¶ 1. On the same day Appellees filed their amended complaint, they also filed an amended motion for a special injunction (in the nature of a temporary restraining order) and a preliminary injunction seeking, among other things, that GTCA be "enjoin[ed] from taking any steps to plan, design, effectuate, commence, construct or install any alterations or improvements to the Condominium Common Elements without first obtaining the required approval and consent of Unit Owners and Institutional Mortgagees…." *See* Amended Motion for Special/Preliminary Injunction, 4/10/2017, at ¶ 26.

In April of 2017, the trial court held a three-day hearing on Appellees' motion for preliminary injunction. On May 11, 2017, the trial court entered an order granting Appellees' motion as follows:

> [GTCA is] enjoined from taking any steps to effectuate, commence, construct, or install any alterations or improvements pursuant to the GTCA Infrastructure Plan, or any other rehabilitation to any systems covered by the GTCA Infrastructure Plan, without first obtaining the approval and consent of Unit Owners and Institutional Mortgagees pursuant to § 15.2 of the Code of Regulations.
>
> [GTCA is] authorized to enter into contracts to explore alternatives to the GTCA Infrastructure Plan. [GTCA] will not, however, begin any construction or installation of any such alternative, or enter into any agreement to do so, without first obtaining the approval and consent of Unit Owners and Institutional Mortgagees pursuant to § 15.2 of the Code of Regulations.
>
> This Preliminary Injunction shall be effective upon [Appellees'] filing with the Department of Court Records cash, bond, or other appropriate security in the sum of ten thousand dollars ($10,000).

Trial Court Order, 5/11/2017, at 1-2 (unnumbered pages).

On May 16, 2017, GTCA filed a timely notice of appeal pursuant to Pa.R.A.P. 311(a)(4), which states that an appeal may be taken as of right from an order granting an injunction. The trial court subsequently directed GTCA to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and GTCA timely complied.[3]

GTCA sets forth the following issues in its statement of questions involved:

> Whether the [t]rial [c]ourt erred in granting Appellees' Amended Motion for Special Injunction (in the Nature of a Temporary Restraining Order) and Preliminary Injunction, generally, and in the following particulars:
>
> 1. Finding, without reasonable grounds, that Appellees satisfied all of the prerequisites for an award of a special and/or preliminary injunction, namely as follows:
>
> > a. That Appellees are likely to succeed on the merits of their claim (*i.e.*[,] that Section 15.2 of the Code of Regulations

---

[3] GTCA and the Commercial Association acknowledge that GTCA is organized as a non-profit corporation. **See** GTCA's Brief at 26; Commercial Association's Brief at 43. Under 42 Pa.C.S. § 762(a)(5), the Commonwealth Court has exclusive jurisdiction of appeals from final orders of the courts of common pleas in cases involving all actions or proceedings relating to not-for-profit corporations. Nevertheless, as no party has objected to our jurisdiction and in the interests of judicial economy, we exercise our discretion to accept jurisdiction of this appeal. **See** Pa.R.A.P. 741(a) ("The failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the last day under these rules for the filing of the record shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of law vesting jurisdiction of such appeal in another appellate court."); **Gordon v. Philadelphia County Democratic Executive Committee**, 80 A.3d 464, 474-75 (Pa. Super. 2013) (accepting jurisdiction pursuant to Rule 741(a) where the appellees did not object and judicial economy was served).

applies to the activities outlined in the GTCA Infrastructure Plan and in levying assessments for the same);

b. That Appellees will be irreparably harmed and cannot be compensated by adequate monetary damages should the preliminary injunction not be granted;

c. That greater injury will result to Appellees from not granting the preliminary injunction and that [GTCA] will not be substantially harmed;

d. That the granting of the preliminary injunction will restore the parties to the status quo;

e. That the preliminary injunction is properly suited to abate the offending conduct; and,

f. That the granting of the preliminary injunction will not adversely affect the public interest.

2. By finding that the implementation of the GTCA Infrastructure Plan requires a vote by the unit owners and institutional mortgagees pursuant to Section 15.2 of the Code of Regulations;

3. By finding that the implementation of the GTCA Infrastructure Plan amounts to an alteration of or further improvement of the common elements of the Condominium Building rather than replacement and/or repair of common elements;

4. By finding or ruling that [GTCA] cannot issue or levy assessments without first taking a vote pursuant to Section 15.2 of the Code of Regulations;

5. By failing to acknowledge and follow prior precedent of [GTCA] related to the making of repairs and replacements to common elements[,] which included the replacement of elevator cables, the renovation of the lobby area, the renovation of hallways, the installation of a new security systems [*sic*] (that arguably was a further improvement), the installation of a new roof, as well as other repairs and replacements identified to the [c]ourt, without taking a vote pursuant to [S]ection 15.2 of the Code of Regulations, which prior precedent acknowledged the intent of the real and perceived limitations of Section 15.2 and precludes Appellees from arguing that Section 15.2 of the Code of Regulations applies to the implementation of the GTCA Infrastructure Plan;

- 7 -

6. By failing to acknowledge and follow prior precedent of [GTCA] related to the making of repairs and replacements to common elements[,] which included the replacement of elevator cables, the renovation of the lobby area, the renovation of hallways, the installation of a new security systems [*sic*] (that arguably was a further improvement), the installation of a new roof, as well as other repairs and replacements identified to the [c]ourt, without taking a vote pursuant to [S]ection 15.2 of the Code of Regulations[,] which defines the intent of Section 15.2 as not requiring a vote to repair or replace common elements that have exceeded their useful life.

7. By granting injunctive relief against the individual [d]irectors/[b]oard [m]embers.

8. By issuing an [o]rder that establishes that the replacement of windows that have exceeded their useful life is an alteration or further improvement.

9. By issuing an [o]rder that establishes that the repair and/or replacement of the HVAC system and waste stacks that have exceeded their useful life at [Gateway Towers Condominium] are alterations or further improvements.

10. By issuing an [o]rder that establishes that the [b]oard may not make assessments to create a reserve to pay for the repair and replacement of Common Elements.

11. By issuing an [o]rder that prevents the [b]oard from repairing, replacing and maintaining any systems identified in the Infrastructure Plan, which systems are critical components of Common Elements in contravention of the clear language in Section 15 and Section 15.1 of the Code of Regulations and other Condominium Documents.

GTCA's Brief at 5-9.

At the outset, we point out that GTCA raises eleven issues, including one with six subparts, in its statement of questions involved. However, GTCA does not divide the argument section of its brief into eleven corresponding

parts; instead, it divides it into three, incongruous sections.[4]  We admonish GTCA for its lack of compliance with Rule 2119(a).  **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); **Donaldson v. Davidson Bros., Inc.**, 144 A.3d 93, 99 n.9 (Pa. Super. 2016) (determining that the appellant failed to comply with Rule 2119(a) where the appellant's brief did not "present and develop eight arguments in support of the eight questions raised").

---

[4] GTCA's statement of questions involved concerns us in other ways as well. Initially, we remind GTCA's counsel that "[t]he effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them."  **See Commonwealth v. Snyder**, 870 A.2d 336, 340 (Pa. Super. 2005) (citations omitted).  More troubling than GTCA's verboseness, however, is its failure to address the bulk of these issues in the argument section of its brief.  Further, GTCA dedicates two entire sections of its three-part argument to issues that it does not clearly identify in its statement of questions involved, namely standing and the unclean hands doctrine.  Finally, we note our confusion as to why issue number 7 — pertaining to the trial court's granting injunctive relief against GTCA's individual directors/board members — is included when GTCA's counsel insists that such individuals did not file the appeal, she no longer represents them, she contends that they have been dismissed from this action, and the trial court conceded that it erred in granting injunctive relief against individual directors/board members in its Rule 1925(a) opinion. **See** Response to Rule to Show Cause, 6/13/2018, at 1-2; TCO at 7.

Because GTCA advances three discernible issues with accompanying analysis in its argument section, we limit our review to those claims.[5] In its first issue, GTCA argues that "Appellees lack standing to maintain this action in their individual capacities." GTCA's Brief at 24 (unnecessary capitalization and emphasis omitted). GTCA states that "Appellees' contention that the [GTCA b]oard, in passing the Infrastructure Plan, exceeded its authority under the Condominium Documents, could only have been maintained as a derivative action." *Id.* at 21. Citing 15 Pa.C.S. § 1712(a) and arguing that corporate principles apply to a non-profit entity like GTCA, GTCA states that "[i]t is a general rule that an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder, though the injury may result in diminishing or destroying the value of the stock." *Id.* at 25; *see also id.* at 26.[6] GTCA concludes that Appellees' claims "belong to

---

[5] We deem all other issues raised in GTCA's statement of questions involved waived to the extent they do not overlap with the three main arguments presented and developed by GTCA in its argument section. *See PHH Mortg. Corp v. Powell*, 100 A.3d 611, 615 (Pa. Super. 2014) ("Because the 'Argument' section of the Powells' appellate brief sufficiently identifies two issues and provides legal argument in support of them, however, we will address these two issues herein. The other nine issues set forth in the 'Statement of Questions Involved' are waived, as the above-referenced failures to comply with our appellate rules preclude our ability to conduct meaningful appellate review of these issues.").

[6] GTCA's citation to 15 Pa.C.S. § 1712(a) to support this proposition befuddles us, as that statutory section appears to pertain to the standard of care and justifiable reliance of directors, and not to who can bring an action at law to recover damages for an injury to a corporation.

[GTCA] and not the individual Appellees[,]" and therefore Appellees "have no standing to commence and maintain this action in their individual capacities." *Id.* at 27.

GTCA has waived this claim. This Court has explained that "[i]n Pennsylvania, whether a party has standing to maintain an action is not a jurisdictional question. Thus, an issue relating to standing is waivable." *Grimm v. Grimm*, 149 A.3d 77, 83 (Pa. Super. 2016) (internal quotation marks, brackets, footnote, and citations omitted); *see also In re Adoption of Z.S.H.G.*, 34 A.3d 1283, 1289 (Pa. Super. 2011) (*per curiam*) (clarifying that "standing is *not* intertwined with subject matter jurisdiction when a statute designates who may sue" and is therefore subject to waiver) (emphasis in original). Appellees and the Commercial Association both assert that GTCA did not raise this claim below, and GTCA does not point us to where it did so. *See* Appellees' Brief at 12; Commercial Association's Brief at 39.[7]

---

[7] Although GTCA includes a statement of place of raising or preservation of issues in its brief, it provides little guidance to us. Therein, GTCA vaguely asserts that it "preserved the issues that form the basis of this appeal, and which arise out of the May 1[1] [o]rder, by raising the same in the various pleadings filed in this case, during the three-day hearing held before the [trial court,] as well as in [GTCA's] [p]ost-[h]earing [b]rief." GTCA's Brief at 20. Problematically though, it includes no specific citations to where in the record these issues were raised. *See* Pa.R.A.P. 2117(c)(4) ("Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the statement of the case *shall also* specify … (4) Such pertinent quotations of specific portions of the record, or summary thereof, *with specific reference to the places in the record where the matter appears* (*e.g.* ruling or exception thereto, etc.) as will show that the question was timely and properly raised below so as to preserve the question on

- 11 -

Further, at a minimum, GTCA has not raised this issue in its Rule 1925(b) statement, nor in its statement of questions involved. Accordingly, we deem it waived. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [s]tatement … are waived."); **Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 225 (Pa. Super. 2014) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation … therefore, we look first to the language of that order.") (internal quotation marks and citations omitted); Trial Court Order, 5/23/2017, at 1 (unnumbered page) (warning GTCA that "[a]ny issue not stated in the [c]oncise [s]tatement shall be deemed waived"). Accordingly, no relief is due on this basis.

In its second issue, GTCA maintains that "Appellees are barred from seeking equitable belief [*sic*] because they come with unclean hands." GTCA's Brief at 27 (unnecessary emphasis and capitalization omitted). It argues that "Appellees are seeking to prohibit certain conduct and actions in which they themselves had previously engaged." **Id.** at 28 (citations omitted). GTCA explains that "[d]uring the hearing, … Appellee[s] admitted that, during the

_____

appeal.") (emphasis added). We advise GTCA that "it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." **Phillips V. Lock**, 86 A.3d 906, 920 (Pa. Super. 2014) (citation omitted).

course of Gateway Towers' existence, no vote of the [u]nit [o]wners had ever been held for *any* replacement projects, regardless of cost or scope." **Id.** (citation omitted; emphasis in original). It contends that "[d]uring each of these projects, at least one of the Appellee[s] was on [GTCA's b]oard." **Id.** Consequently, it requests that we vacate the preliminary injunction because Appellees "came into equity with unclean hands." **Id.** at 30.

Once again, we deem this claim waived. Both Appellees and the Commercial Association assert that GTCA did not make this argument below, and GTCA does not identify where it raised this unclean hands argument before the trial court. **See** Appellees' Brief at 12-13; Commercial Association's Brief at 39. We also observe that GTCA has not raised this issue clearly in its Rule 1925(b) statement, nor in its statement of the questions involved. **See** Pa.R.A.P. 2116(a), **supra**; Pa.R.A.P. 1925(b)(4)(vii), **supra**; **Commonwealth v. Coward**, 414 A.2d 91, 99 (Pa. 1980) (determining that party waived unclean hands claim).[8, 9] Thus, no relief is due.

_____

[8] To the extent GTCA contends that the issues in its Rule 1925(b) statement or statement of questions involved encompass this claim, we remind GTCA that "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." **Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001) (citations omitted).

[9] We recognize that "[t]he court may raise the doctrine of unclean hands *sua sponte*." **In re Bosley**, 26 A.3d 1104, 1114 (Pa. Super. 2011) (citation omitted). We decline to do so based on the arguments and record before us, as we consider persuasive the Commercial Association's argument that not all of the Appellees have previously served on GTCA's board and that the past projects undertaken by some of the Appellees are distinguishable from the

Finally, in its third issue, GTCA claims that "Appellees failed to satisfy at least one of the 'six essential prerequisites' necessary for the issuance of the preliminary injunction." GTCA's Brief at 30 (unnecessary emphasis and capitalization omitted). As a result, GTCA urges us to vacate the preliminary injunction. *Id.*

Our Supreme Court has discerned:

[O]ur review of a trial court's order granting or denying preliminary injunctive relief is highly deferential. This highly deferential standard of review states that in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to examine the record to determine if there were any apparently reasonable grounds for the action of the court below. We will find that a trial court had apparently reasonable grounds for its denial of injunctive relief where the trial court has properly found that any one of the following essential prerequisites for a preliminary injunction is not satisfied.

There are six essential prerequisites that a party must establish prior to obtaining preliminary injunctive relief. The party must show: 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and, 6) that a preliminary injunction will not adversely affect the public interest. The burden is on the party who requested preliminary injunctive relief….

_____

nearly $21 million Infrastructure Plan at issue here. *See* Commercial Association's Brief at 47-49.

- 14 -

*Warehime v. Warehime*, 860 A.2d 41, 46-47 (Pa. 2004) (internal citations, quotation marks, and footnotes omitted).

GTCA advances that "there were numerous deficiencies with respect to *each* of the six required elements." GTCA's Brief at 32 (emphasis in original). With respect to the first *Warehime* prerequisite — that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages — GTCA states that "[a]ny alleged harm was speculative at best (as no assessment had yet been issued, and was at least five months away), and any alleged harm would constitute a purely financial injury…." *Id.* at 33 (internal quotation marks omitted). Further, GTCA claims that, "[i]n any event, even if any alleged harm existed, … Appellees would have had an adequate remedy at law, thus barring … Appellees from seeking equitable relief." *Id.*

In determining that Appellees satisfied this first prerequisite, the trial court explained that it "granted the injunction to prevent the immediate and irreparable harm that would come to [Appellees], fulfilling the first of the *Warehime* factors. The harm is not purely economic damage, it is people potentially losing their homes." TCO at 3. We agree.

To help establish this first factor, both Appellees and the Commercial Association compare the residential unit owners in the case *sub judice* to the policyholders in *Safeguard Mut. Ins. Co. v. Williams*, 345 A.2d 664 (Pa. 1975). In *Safeguard*, the policyholders "filed a complaint in equity and a petition for a preliminary injunction seeking to enjoin [their insurance

- 15 -

company] from the cancellation or the threatened cancellation of its current policyholders for non-payment of an assessment premium, until the equity action contesting the legality of the assessment could be brought to a final disposition." *Id.* at 666.  In determining that the chancellor properly granted the policyholders a preliminary injunction, our Supreme Court reasoned that,

> many of the policyholders are people of meager means.  Many found it necessary to finance the agreed-upon premiums and would have significant difficulty in attempting to meet the additional financial burden that would be occasioned by the assessment.  It is equally clear that cancellation of their policies during the pendency of this lawsuit would result in irreparable harm to them.  As noted by the learned court below, the 12,000 policyholders whose policies would be terminated in the event they could not meet the additional assessments would find themselves without insurance coverage.  During that period of time they might lose lawsuits because of their inability to pay for the services of counsel or find themselves losing operating privileges under the Vehicle Code….  Many of the possible consequences are of such a nature that monetary damages would be inadequate.

*Id.* at 670.

Here, at the preliminary injunction hearing in April of 2017, the president of GTCA's board testified that he advised unit owners that "[t]he assessments require payments with the first payment due on August 1, 2017[,]" and corroborated that GTCA informed unit owners that it "will take every means at its disposal to collect monies owed…."  **See** N.T. Hearing, 4/10/2017-4/13/2017, at 32-34, 94; **see also** Commercial Association's Brief at 29-30, 32-33.  Further, Appellees proffered evidence that many of the unit owners are elderly and on a fixed income, and one particular Appellee testified that she is in her seventies and retired, has lived in the building for almost 35

years, has no mortgage, and would not be able to afford the approximately $70,000 assessment imposed on her by way of the Infrastructure Plan, of which she owed over $16,000 on August 1, 2017. *See* N.T. at 286-89; Commercial Association's Brief at 30. The Commercial Association points out that "each [u]nit [o]wner, not only … Appellees, would have had to immediately pursue financing in order to have it in place by the August 1st due date — if it was possible for [them] to obtain financing at all." Commercial Association's Brief at 30. At the hearing, Appellees additionally expressed their concerns about losing and/or endangering their homes in a process in which they have no voice. *See* N.T. at 245-46, 287; Commercial Association's Brief at 32-33; Appellees' Brief at 19-20.

Thus, as in *Safeguard*, Appellees demonstrated that they "would have significant difficulty in attempting to meet the additional financial burden that would be occasioned by the assessment." *Safeguard*, 345 A.2d at 670. Unit owners have to pay the contested assessment or risk losing their homes, whether by foreclosure or proactively moving because they know they cannot make ends meet in light of the assessment. We find persuasive Appellees' observation that "[e]ven if owners displaced by the burden of the assessments could manage to obtain new housing, the loss of their current home would remain irreparable harm because each parcel of real estate is unique." Appellees' Brief at 20 (citation omitted). Therefore, similar to the policyholders in *Safeguard*, monetary damages would be inadequate to

compensate Appellees for their harm. Accordingly, we discern that Appellees satisfied this first prerequisite. *See Warehime, supra*.

GTCA next contests the second *Warehime* prerequisite — that issuance of the injunction will not substantially harm other interested parties in the proceedings. *See id.* GTCA argues that it "proffered unnerving testimony during the hearing that, if the [p]reliminary [i]njunction were granted, other interested parties, including the general public, would be subjected to potential physical harm…." GTCA's Brief at 43-44. Specifically, GTCA states that "the lower court heard testimony that not one, but four, industrial-grade windows had malfunctioned and plunged to the ground." *Id.* at 44. Additionally, GTCA advances that it also suffered injury "via interference over its right and duties to effectuate the maintenance, repair, and replacement of the Common Elements…." *Id.* at 43-44. It asserts that, before the preliminary injunction hearing, "no unit owner votes had ever been held regarding any maintenance, repairs, or replacements to the Common Elements." *Id.* at 45 (emphasis omitted).

Nevertheless, the trial court found that Appellees satisfied the second *Warehime* prerequisite. It explained:

> Greater injury would result from refusing the injunction, as required by the second prong of *Warehime*. The injunction was crafted to prevent the imposition upon [Appellees] of unmanageable debt without the opportunity to exercise their contractual right of collective refusal. Any potential harm to [GTCA] is just that the work outlined in the GTCA Infrastructure Plan cannot proceed without a vote of unitholders and institutional mortgagees. [GTCA] ha[s] a route to implementation of the GTCA

- 18 -

> Infrastructure Plan. They simply must garner sufficient approval from the unitholders and institutional mortgagees.

TCO at 3-4.

We agree with the trial court that Appellees have satisfied this prerequisite, as the issuance of an injunction will not substantially harm GTCA. Although the trial court did not address GTCA's argument regarding the potential for physical harm to interested parties and the general public, the Commercial Association sets forth a thorough recitation of the evidence presented demonstrating that "there is no immediate or imminent threat with regard to the health, safety or welfare of the [u]nit [o]wners or the public regarding any of [the] work related to the Infrastructure Plan." Commercial Association's Brief at 25 (emphasis omitted); *see generally id.* at 25-29.[10]

Moreover, we do not view any interference with GTCA's rights and duties as a greater injury than imposing unmanageable debt on the unit owners at

_____

[10] For instance, with respect to the purportedly malfunctioning windows, the Commercial Association asserts:

> [T]he record in fact shows that in 2015, GTCA had hired AE Dynamics to mechanically fasten and secure all of the windows on the residential floors closed in late 2015 and early 2016. According to AE Dynamics' correspondence…, the fasteners used "are generally intended to be used in a permanent manner" and asserted further "that the fasteners will continue to perform as intended for a period of 5 years or longer, provided they are installed in a proper manner…."

Commercial Association's Brief at 26 (internal citations and emphasis omitted). In addition, the Commercial Association observes that Appellees' expert testified that "[t]here is no life/safety issues related to the windows as they are on the building[,]" *id.* at 27 (citations omitted), and a board member admitted that this fix has been successful with respect to life/safety issues. *Id.* at 27-28 (citation omitted).

the cost of their homes. We observe that, although a vote may have never occurred in the past, it does not mean that the Condominium Documents do not require GTCA to obtain such approval. It simply could be that no one has demanded compliance with the Condominium Documents before and, in that case, there could be no interference with GTCA's rights and duties as it never had the authority to proceed without a vote in the first place. Thus, we determine that Appellees fulfilled this second prerequisite. *See Warehime, supra*.

We now turn to the third *Warehime* prerequisite — that the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. *See id.* GTCA argues that "the [p]reliminary [i]njunction doesn't maintain the status quo, it creates an entirely new one out of whole cloth — one that never existed during any period of Gateway Towers' existence." GTCA's Brief at 46 (emphasis omitted). It states that "no vote had ever been taken or required for any repairs, maintenance, or replacements[,]" and "[GTCA's b]oard never put[s] projects like the Infrastructure Plan up for a vote of the [u]nit [o]wners." *Id.* at 47, 48.

The trial court, however, found that Appellees met the third *Warehime* prerequisite, explaining:

> By granting the injunction, the parties were properly restored to the status quo, fulfilling the third *Warehime* factor. [Appellees] maintain their homes and [GTCA is] required to, if [it] wish[es] to proceed before a trial can be held, act in accordance with the Articles of Incorporation, the Declaration of Conodminium…, and

> the Code of Regulations … that control Gateway Towers Condominium.
>
> [GTCA], somewhat absurdly, maintain[s] that compliance is an unreasonable burden. One board member even threatened in our hearing to resign his seat if forced to consult with unitholders and mortgagees on this issue. Perhaps unintentionally, he identified his relief: if he does not wish to fulfill his duties as a board member, he may quit. And so may any board member. As long as they serve on the GTCA [b]oard, however, members must fulfill the duties of that board.

TCO at 4.

We agree with the trial court that Appellees satisfy this prerequisite, though our reasoning is slightly different. Our Supreme Court has explained that "a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct." ***SEIU Healthcare Pennsylvania v. Com.***, 104 A.3d 495, 509 (Pa. 2014) (citation and internal quotation marks omitted). Before the complained of conduct — *i.e.*, GTCA's board's passing the Infrastructure Plan without the approval of the unit owners and mortgagees — it was unclear whether the Condominium Documents required a vote. Although no vote had occurred in the past, Appellees contended at the time that the Condominium Documents mandate a vote while GTCA disputed that requirement. Further, before the complained-of conduct, Appellees maintained their homes and did not have to pay the at-issue assessments, and GTCA had not yet implemented the Infrastructure Plan. We determine that the trial court's order preserves these circumstances until the question of the vote requirement can play out through the litigation process.

Nonetheless, though, we feel we must construe the trial court's order further. The trial court is not requiring that a vote take place on the Infrastructure Plan. Instead, the trial court advised GTCA that if it wants to proceed with the Infrastructure Plan before the conclusion of the underlying litigation on the merits, it could do so by obtaining the approval that Appellees say the Condominium Documents compel. In other words, GTCA may proceed before the court decides the question of whether a vote is required if it garners the approval that Appellees argue is necessary. With that clarified, we ascertain that Appellees fulfilled this third prerequisite. **See Warehime, supra**.

We next consider the fourth prerequisite — that the activity Appellees seek to restrain is actionable, that their right to relief is clear, and that they are likely to prevail on the merits. **See id.** At the outset, we observe that our Supreme Court has said, "[t]o establish a clear right to relief, the party seeking an injunction need not prove the merits of the underlying claim, but need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties." **SEIU**, 104 A.3d at 506 (citation omitted). Here, the trial court found that Appellees had a clear right to relief, explaining:

> The crux of the matter is whether the work in the GTCA plan is considered an alteration or a repair. We determined, as a factual matter, that the proposed work is an alteration and therefore requires a vote.
>
> The Board of the GTCA proposed four construction projects: (1) replacement of the existing HVAC system[] at a cost of more than $14 million; (2) replacement of all of approximately 1[,]500 windows at a cost of about $5.3 million; (3) installation of metal

panels at a cost of $1.6 million; and (4) installation of new waste stack equipment at a cost of several hundred thousand dollars.

TCO at 4-5 (internal citation omitted). Upon examining § 15.2 of the Code and the Article III(C)(2), produced *supra*, the trial court reasoned:

[W]e see that "repairs" may be made by … GTCA without direct authorization by unitholders (apart, of course, from the regular election of directors), but "alterations" require a supermajority vote of not only unitholders, but their mortgagees.

The governing documents do not define what constitutes an "alteration" versus a "repair," so we are required to look to common usage of those terms. We heard testimony in which the terms were defined using the International Existing Building Code ("IEBC"). The IEBC defines repairs as "patching or restoration or replacement of damaged materials, elements, equipment or fixtures for the purpose of maintaining such components in good or sound condition with respect to existing loads or performance requirements." In Section 403.1 of the [IEBC], alteration is defined as "the removal and replacement or the covering of existing materials, elements, equipment, or fixtures using new materials, elements, equipment or fixtures that serve the same purpose."

We heard testimony from Mark Baker, a consulting engineer, who testified that removal of all of the windows followed by installations of new windows "would be an alteration Level I without a doubt." [GTCA] complain[s] on [a]ppeal that our reading of the documents is incorrect. However, we found, based on the evidence and testimony presented before us[,] that the work proposed falls under the category of alterations and therefore, under the Code of Regulations, [GTCA] must obtain the consent of [unitholders] through a vote.

TCO at 5-6 (internal citations omitted).

In response, GTCA makes a three-fold argument as to why Appellees' right to relief is not clear. First, GTCA contends that Appellees "did not have a clear right to relief, as the Uniform Condominium Act[, 68 Pa.C.S. §§ 3101-3414 (referred to herein as "UCA"),] unambiguously authorizes [GTCA] to

- 23 -

implement the Infrastructure Plan without a vote of the [u]nit [o]wners." GTCA's Brief at 50-51 (unnecessary emphasis omitted). Second, GTCA says Appellees "did not have a clear right to relief because, under the Condominium Documents, replacements are distinct from alterations." **Id.** at 56 (unnecessary emphasis omitted). Finally, GTCA claims that "[t]here was no clear right to relief because this was an issue of first impression where other jurisdictions that had considered the same issue reached the opposite conclusion." **Id.** at 60 (unnecessary emphasis omitted). We address each argument in turn.

First, GTCA states that Appellees "could not, and cannot, prove that they had a clear right to relief, as the [UCA] … expressly provides otherwise. The lower court, therefore, erred and abused its discretion by ignoring the clear statutory authority (and obligation) conferred upon [GTCA] to maintain, repair, and replace the Common Elements." **Id.** at 51. It argues that, pursuant to the UCA, GTCA has "unbridled authority to implement the Infrastructure Plan" and that "under the UCA, alteration is a wholly-distinct concept from replacement." **Id.** at 52, 54 (emphasis and footnote omitted). However, it also recognizes that the rights conferred on a unit owners' association by the UCA is limited by that association's declaration. **See id.** at 52 (observing that certain rights under the UCA "may only be limited to the extent expressly provided in the declaration"); **see also** Commercial Association's Brief at 18 ("The powers conferred upon a '[u]nit [o]wners' [a]ssociation' by the retroactive provisions of the [UCA] are explicitly limited

'[e]xcept to the extent provided by the declaration.' 68 Pa.C.S. § 3307. **See also** 68 Pa.C.S. § 3302(a).").  Accordingly, we fail to see the import of the UCA if GTCA's Condominium Documents amend or limit those rights.[11]  As the trial court determined that the Condominium Documents prescribed specific rights, it did not err by disregarding the statutory provisions of the UCA.

Turning to GTCA's second argument, it states that, "[s]hould this Court disagree with [GTCA's] position regarding the UCA, the lower court still erred in concluding that … Appellees have a clear right to relief, as the Condominium Documents say otherwise."  GTCA's Brief at 56.  GTCA asserts that "[u]nder the Condominium Documents, there is no ambiguity that *replacement* is different from *alterations* or *further improvements*."  **Id.** at 58 (emphasis in original).  It argues that "Section 15.2 of [the] Code refers to 'alteration or further improvement' but makes no mention of the word 'replacement,' despite the fact that the word 'replacement' is clearly contemplated elsewhere by the Condominium Documents."  **Id.** at 58-59.  GTCA states that the trial court "improperly equated *replacement* with *alteration*, despite a mountain of evidence being presented indicating that the two terms were clearly district concepts under the Condominium Documents."  **Id.** at 59 (emphasis in original).  We disagree.

Pursuant to Section 15.2(a), GTCA need not obtain prior approval for "repairs and maintenance of the existing improvements" but must garner

---

[11] Oddly, GTCA does not argue that the rights provided by the UCA are not limited by GTCA's Condominium Documents.

approval for "alteration or further improvement of the Common Elements...." GTCA's Exhibit F (Code of Regulations § 15.2(a)). The trial court consequently had to determine if the Infrastructure Plan constituted 'repairs and maintenance' or 'alteration or further improvement.'[12] There was evidence in the record supporting that the Infrastructure Plan constituted an alteration. **See** TCO at 6 (citing Mark Baker's testimony that the removal of all windows and installation of new windows constituted an alteration); **see also Warhime, supra** ("[A]n appellate court is directed to examine the record to determine if there were any apparently reasonable grounds for the action of the court below."). Thus, based on the arguments before us, we conclude that Appellees have sufficiently "demonstrate[d] that substantial legal questions must be resolved to determine the rights of the parties." **See SEIU, supra.**

Finally, GTCA argues that — to the extent we disagree that the UCA or Condominium Documents expressly authorized the Infrastructure Plan — the trial court nevertheless "erred in determining, as an issue of first impression,

---

[12] We reiterate that Section 15.2(a) does not use the word 'replacement.' The Commercial Association, however, observes that "GTCA itself has characterized the Infrastructure Plan's work as a 'replacement' (in an attempt to distinguish it from 'alteration' or 'improvement' which would require a [u]nit [o]wner vote under Section 15.2)." Commercial Association's Brief at 17-18; **see also id.** at 11 ("[U]nder Pennsylvania law and pursuant to the testimony heard during the injunction hearing, including that of GTCA [b]oard [m]embers, the scope of work under the Infrastructure Plan constitutes an 'alteration' or 'improvement,' rather than a 'replacement[.']"). Ultimately, as set forth *supra*, the trial court classified the Infrastructure Plan as an alteration. **See** TCO at 4.

that … Appellees had a clear right to relief, as this result was contrary to the conclusion that numerous jurisdictions had reached when addressing the same issue." GTCA's Brief at 60. Put differently, GTCA says that "there was no reasonable basis to conclude that there was a clear right to relief because the issue had never been addressed, and because the jurisdictions that had addressed it had aligned with [GTCA's] position." *Id.* at 61. GTCA avers that "[c]onstruing similar voting requirement provisions, other courts have routinely found that a condominium association can authorize replacements to common elements without a vote because replacements to common elements fall exclusively within the association's independent duty to maintain, repair, and replace … common elements…." *Id.*

We reject this argument. We repeat that our Supreme Court pronounced that "[t]o establish a clear right to relief, the party seeking an injunction need not prove the merits of the underlying claim, but ***need only demonstrate substantial legal questions must be resolved to determine the rights of the parties*.**" *SEIU, supra* (emphasis added). Thus, even if this matter were an issue of first impression in our Commonwealth as GTCA contends, it would not preclude Appellees from establishing a clear right to relief. Accordingly, we determine that Appellees satisfied this fourth prerequisite. *See Warehime, supra*.

We next consider the fifth ***Warehime*** prerequisite — that the injunction Appellees seek is reasonably suited to abate the offending activity. *See id.* The trial court reasoned that the injunction "is reasonably suited to abate the

offending activity because, by compelling [GTCA] to follow the terms of the Declaration and the Code, it protects [Appellees] from the imposition of obligations without the process promised to them in those documents, and upon which they reasonably relied." TCO at 6.

GTCA, however, claims that the trial court "had no basis, reasonable or otherwise, to conclude that the [p]reliminary [i]njunction was suited to abate the offending activity for one straightforward reason: there was no offending activity." GTCA's Brief at 67. GTCA repeats its arguments that it had not imposed an assessment yet, it possessed the authority to implement the Infrastructure Plan without a vote, and it had never taken a vote of the unit owners in the past. *See id.* at 67-69. For the reasons already discussed at length above, we are unpersuaded by these assertions and agree with the trial court that GTCA engaged in offending conduct. Consequently, we deem this fifth *Warehime* prerequisite met. *See Warehime, supra*.

The last *Warehime* prerequisite examines if a preliminary injunction will adversely affect the public interest. *See id.* The trial court noted that it is "not aware of any way in which this injunction could affect the public interest, adversely or otherwise." TCO at 6. GTCA contests this conclusion, asserting that it "provided alarming evidence that delaying the Infrastructure Plan could result in physical harm to [GTCA's] residents, invitees, licenses [*sic*], as well as the public at large." GTCA's Brief at 69-70. It also claims that "the [p]reliminary [i]njunction adversely affects the public's interest as it relates to injunctive jurisprudence itself. In other words, the public is

- 28 -

damaged where a preliminary injunction is issued in derogation of the stringent precepts on which equitable relief relies." *Id.* at 70.

We disagree. Initially, as described *supra*, the evidence establishes that delaying the Infrastructure Plan would pose no immediate threat to the safety of GTCA's unit owners or the public. **See** footnote 10, **supra**, and accompanying text. Moreover, issuance of this preliminary injunction does not diminish 'injunctive jurisprudence' as we determine that Appellees have established all six essential **Warehime** prerequisites. Accordingly, based on the foregoing, we affirm the trial court's order granting Appellees' motion for preliminary injunction.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/7/2019