J-E01003-19

2019 PA Super 270

| | | |
|---|---|---|
| DANIEL MOHN, CHAD WALLACE AND IRENE SILVEUS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY REPUBLICAN COMMITTEE | : | No. 2694 EDA 2018 |
| | : | |
| APPEAL OF: DANIEL MOHN | : | |

Appeal from the Order Dated December 14, 2017
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2016-03560

BEFORE:  PANELLA, P.J., BENDER, P.J.E., GANTMAN, P.J.E., LAZARUS, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., and McLAUGHLIN, J.

OPINION BY KUNSELMAN, J.:                    **FILED SEPTEMBER 03, 2019**

Daniel Mohn appeals from the order granting summary judgment in favor of the Bucks County Republican Committee ("the BCRC"), and denying his cross-motion for summary judgment on his claims for declaratory and injunctive relief based on alleged violations of the Pennsylvania Election Code. Mr. Mohn directed his appeal to the Commonwealth Court, which has jurisdiction over Election Code violations pursuant to 42 Pa.C.S.A. § 762(a)(4)(i)(c). However, the Commonwealth Court *sua sponte* transferred the appeal to this Court based on **Gordon v. Philadelphia County Democratic Exec. Committee**, 80 A.3d 464 (Pa. Super. 2013), wherein a three-Judge panel of this Court determined that it had jurisdiction over an

appeal involving an alleged Election Code violation. We granted *en banc* review to determine whether the Commonwealth Court has exclusive jurisdiction over appeals involving alleged Election Code violations such that **Gordon** should be overruled. After careful consideration, we conclude that **Gordon** was incorrectly decided, and should be overruled. We additionally conclude that the issues raised by Mr. Mohn's appeal fall within the exclusive jurisdiction of the Commonwealth Court. Accordingly, we transfer the instant appeal back to the Commonwealth Court to decide its merits.

We briefly summarize the relevant factual and procedural history underlying the appeal as follows. Mr. Mohn was elected as a Republican committeeperson in Yardley Borough, Bucks County, in 2014 and again in 2016. After the 2016 election, the Bucks County Republican Party filed ethics complaints with the BCRC regarding Mr. Mohn's actions during the election, including campaigning against Republican-endorsed candidates and failing to fulfill his responsibility to cover the polls on the day of the primary election. Following a hearing, the BCRC Executive Committee disqualified Mr. Mohn from his position based on his violations of the Rules of the Republican Party of Bucks County ("the Local Party Rules").

Thereafter, Mr. Mohn, along with two co-plaintiffs who have since discontinued their claims, filed a complaint against the BCRC in the Court of Common Pleas of Bucks County, seeking declaratory and injunctive relief. Mr. Mohn alleged that the BCRC improperly removed him from his position as

elected committeeperson for his voting precinct. Specifically, he claimed that the actions of the BCRC violated the Pennsylvania Election Code, namely 25 P.S. § 2837,[1] by disqualifying him as a committeeperson for reasons that did not constitute grounds for disqualification under the Local Party Rules. The parties filed cross-motions for summary judgment.

On December 18, 2017,[2] the trial court denied Mr. Mohn's motion for summary judgment, and granted the BCRC's motion for summary judgment on the basis that the court lacked subject matter jurisdiction over the internal operations of a political party pursuant to section 2842 of the Election Code.[3] *See* Trial Court Opinion, 3/13/18, at 5 ("This is a purely intra-party disciplinary matter that the [United States] Constitution has reserved to the [BCRC] to address free from government intervention.").

---

[1] Section 2837 provides, in relevant part, "There may be in each county a county committee for each political party within such county, the members of which shall be elected at the spring primary, or appointed, as the rules of the respective parties within the county may provide. The county committee of each party may make such rules for the government of the party in the county, not inconsistent with law or with the State rules of the party, as it may deem expedient, and may also revoke, alter or renew in any manner not inconsistent with law or with such State rules, any present or future county rules of such party." 25 P.S. § 2837.

[2] The trial court signed its order on December 14, 2017; however, the order was not entered on the docket until December 18, 2017.

[3] Section 2842 provides, in relevant part, that "[w]hen acting in the capacity of a political committee, such duly elected or appointed members shall be subject to the control, direction and supervision of the political committee of which they are members." 25 P.S. § 2842.

- 3 -

As indicated above, Mr. Mohn appealed the trial court's rulings to the Commonwealth Court. However, the Commonwealth Court, relying on **Gordon**, **supra**, *sua sponte* transferred the appeal to this Court. Mr. Mohn now seeks appellate review to determine (1) whether the trial court had jurisdiction to determine if the BCRC violated the Election Code by disqualifying him as a committeeperson under the Local Party Rules; and (2) whether the BCRC was authorized by the Election Code to disqualify him for alleged violations of the Ethics Code of the Local Party Rules, and misconduct on the day of the primary election.

We certified this appeal for *en banc* consideration to decide the following two questions:

1. Whether exclusive jurisdiction over this appeal lies in the Commonwealth Court of Pennsylvania pursuant to 42 Pa.C.S.A. § 762?

2. Whether this Court's prior, three–Judge Panel decision on the issue in **Gordon** . . . should be overruled?

**See** *En Banc* Certification Order, 2/5/19. As we explain below, the answer to both questions is yes.

The issues for our review concern the scope of this Court's appellate jurisdiction. Chapter Seven of the Judicial Code sets forth the "legislatively ordained division of labor" between appellate courts in Pennsylvania. **Valley Forge Indus., Inc. v. Armand Constr., Inc.**, 374 A.2d 1312, 1316 (Pa. Super. 1977); **see also** 42 Pa.C.S.A. § 701 *et seq.* Pursuant to section 742 of the Judicial Code, this Court's jurisdiction is limited, and does not extend to

appeals which fall within the exclusive jurisdiction of our Supreme Court or the Commonwealth Court:

> The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, ***except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court***.

***Id***. (emphasis added).

Notably, the General Assembly consciously removed a group of cases from this Court's appellate jurisdiction and committed them to a court of specialized appellate jurisdiction. ***See Newman v. Thorn***, 518 A.2d 1231, 1235 (Pa. Super. 1986). In this regard, section 762(a) of the Judicial Code enumerates seven specific categories of appeal from the courts of common pleas over which the Commonwealth Court has exclusive jurisdiction. In this case, we are concerned with only one of those categories. Pursuant to section 762(a) of the Judicial Code,

> **(a)** **General rule.**—Except as provided in subsection (b), [which is inapplicable herein] ***the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases***:
>
> . . . .
>
> (4) Local government civil and criminal matters.
>
> > (i) ***All actions or proceedings*** arising under any municipality, institution district, public school, planning or zoning code or under which a municipality or other political subdivision or municipality authority may be formed or incorporated or ***where is drawn in***

> *question the application, interpretation or enforcement of any*:
>
> . . . .
>
> (C) *statute relating to elections, campaign financing or other election procedures*.

42 Pa.C.S.A § 762(a)(4)(i)(C) (emphasis added). Thus, pursuant to our statutory scheme, appeals from final orders of the courts of common pleas involving the application, interpretation or enforcement of any statute relating to elections or election procedures fall within the exclusive jurisdiction of the Commonwealth Court. *See In re Gen. Election for Dist. Justice*, 670 A.2d 629, 631 n.1 (Pa. 1996) ("Although [the Pennsylvania Supreme] Court had previously entertained appeals from the courts of common pleas in election matters . . . jurisdiction over such appeals was given to the Commonwealth Court when that court was created in 1970."); *see also Dayhoff v. Weaver*, 808 A.2d 1002, 1006 (Pa. Cmwlth. 2002) ("Section 762(a)(4)(i)(C) of the Judicial Code provides expressly that the Commonwealth Court shall have *exclusive* jurisdiction over appeals from the trial courts in cases involving elections or election procedures." (emphasis in original)); *In re Nomination in re Warren*, 692 A.2d 1178, 1181 (Pa. Cmwlth. 1997) ("[P]ursuant to 42 Pa.C.S.[A.] § 762(a)(4)(i)(C), this Court has exclusive jurisdiction of election procedures.").

Given that the Commonwealth Court transferred Mr. Mohn's appeal, which involves election matters, to this Court pursuant to *Gordon*, an understanding of that case is essential to our analysis. In *Gordon*, a 2-1

Panel Majority of this Court asserted jurisdiction over an appeal factually similar to the one at bar.[4] There, the Fortieth Ward (40B) Democratic Executive Committee removed Gordon from her elected position as a member of the Ward Committee using Rule VIII,[5] as promulgated by the Democratic Party of the City and County of Philadelphia. Gordon and co-plaintiff, Johnson,[6] filed a lawsuit against the Philadelphia County Democratic Executive Committee, the Ward Committee, and related parties. They claimed that defendants violated section 2842 of the Election Code by using Rule VIII to remove Gordon from her elected position. The complaint sought Gordon's reinstatement to her elected office (Count I), and declaratory and injunctive relief to prevent future similar actions by defendants (Count II).

While the lawsuit was pending, the Ward Committee reinstated Gordon to her position. Thereafter, counsel for co-plaintiffs filed a partial

_____

[4] Judge Bowes dissented and, as we explain in detail below, concluded in her Dissenting Opinion that the Superior Court should have transferred the **Gordon** case to the Commonwealth Court. **See Gordon**, 80 A.3d at 475-76 (Bowes, J., dissenting).

[5] Rule VIII, Article 1, Section E (empowering the Ward Committee to remove a member and declare a vacancy in the membership "if, in the opinion of the entire Ward Committee, a member is unfaithful to the Democratic party and the best interested [sic] of the party.").

[6] The complaint was initially filed as a class action, with Johnson, who voted for Gordon, acting as the purported class representative of the majority of voters who had elected Gordon as a committeeperson. However, Johnson later moved to withdraw the petition for class certification.

discontinuance as to Gordon, and a motion to intervene on behalf of the Philadelphia Democratic Progressive Caucus ("the PDCP"). While the motion to intervene was pending, defendants filed a motion for summary judgment. The trial court granted summary judgment for defendants on the basis that Johnson lacked standing to litigate the action. The trial court subsequently dismissed the PDPC's motion to intervene as moot. Johnson and the PDCP appealed those orders to this Court.

On appeal, the ***Gordon*** Majority first addressed the question of Johnson's standing. It ruled that her claim at Count I as to Gordon's removal was moot. 80 A.3d at 473. The Majority additionally ruled that Johnson's claim at Count II as to prospective use of the Rule was not ripe. ***Id***. As such, the ***Gordon*** Majority affirmed the trial court's entry of summary judgment for defendants. Applying the same rationale, the Majority affirmed the trial court's order denying the PDPC's motion to intervene. ***Id***. (concluding the issues were moot and unripe).[7]

After affirming the trial court's rulings, the ***Gordon*** Majority addressed "[a]s a final matter" the question of whether the Superior Court had jurisdiction to consider the appeal. ***Id***. The Majority acknowledged that,

_____

[7] The ***Gordon*** Majority also addressed the appellants' argument that, "even if the claims as to Gordon's removal are moot, this Court should nonetheless consider its merits because it is capable of repetition, yet evading review." 80 A.3d at 473. The Majority agreed that the issues raised by appellants were of public importance, but was unpersuaded that the issues were likely to avoid review if repeated. ***Id***.

pursuant to section 742 of the Judicial Code, this Court's appellate jurisdiction does not extend to "such classes of appeals as are . . . within the exclusive jurisdiction of . . . the Commonwealth Court." *Id*. at 474. The Majority further acknowledged that pursuant to section 762(a)(4)(i)(C) of the Judicial Code, "the Commonwealth Court 'has jurisdiction to hear appeals involving issues arising from the election process.'" *Gordon*, 80 A.3d at 474.

Nevertheless, the *Gordon* Majority concluded that it had jurisdiction over the appeal because "we were not required to apply, interpret, or enforce the Election Code in reaching our holding." *Id*. at 474.[8] The Majority further concluded that, even if it was "incorrect[,] and [the] interpretation of the Election Code was sufficiently at issue to invoke the Commonwealth Court's jurisdiction," it acted within its discretion under [Pa.R.A.P. 741[9]] in choosing, in the interests of judicial economy, to consider the appeal." *Id*.; *see also*

---

[8] The *Gordon* Majority acknowledged that, pursuant to section 722(2) of the Judicial Code, our Supreme Court has jurisdiction to hear appeals in matters challenging a candidate's right to hold public office. *Gordon*, 80 A.3d at 474. However, the Majority correctly reasoned that such jurisdiction was not implicated because "the issues involved did not involve the right to hold public office within the meaning of [section] 722(2), as the challenge was to a discharge from office rather than preconditions to the holding of office." *Id*.; *see also* 42 Pa.C.S. § 722(2).

[9] Rule 741 provides, in relevant part, as follows: "The failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the last day under these rules for the filing of the record shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of law vesting jurisdiction of such appeal in another appellate court." Pa.R.A.P. 741(a).

*id*. at 474-75 ("Appellees did not object to this Court's jurisdiction, and judicial economy was served by our deciding the case after it was filed, briefed, and argued before us.").

Judge Bowes dissented on the basis that section 762(a)(4)(i)(C) of the Judicial Code confers exclusive jurisdiction upon the Commonwealth Court to hear appeals involving elections matters and the Election Code. She explained:

> [A]ll cases, since the Commonwealth Court was created, that involve elections[,] emanate from the Commonwealth Court or our Supreme Court on appeal from the Commonwealth Court. The present matter involves an election and election procedures[,] and should be decided by the Commonwealth Court.
>
> . . . .
>
> When we decide whether to retain an appeal:
>
>> we must balance the interests of the parties and matters of judicial economy against other factors such as: (1) whether the case has already been transferred; (2) whether our retention will disrupt the legislatively ordained division of labor between the intermediate appellate courts; and (3) whether there is a possibility of establishing two conflicting lines of authority on a particular subject. Moreover, each transfer should be decided on a case-by-case basis.
>
> [***Trumbull Corp. v. Boss Construction Inc.***, 747 A.2d 395, 399 (Pa. Super. 2000).]
>
> In my opinion, consideration of these factors compels that we transfer this case to the Commonwealth Court. . . . [O]ur retention of it would upset the [L]egislature's decision to vest exclusive appellate jurisdiction in the Commonwealth Court over litigation involving elections. Further, this Court has no body of case law concerning election cases and the questions of either standing or mootness in that context. This Court simply has no

experience with election contests and the majority has risked rendering a decision that may conflict with the body of law existing in the Commonwealth Court as to the issues it addresses. I consider it inappropriate for this Court to decide a case involving an internal rule of the Party and whether it conflicts with the Election Code. I would transfer this appeal to the Court with the experience and skill-set to handle the matter expertly.

*Id*. at 475-76 (Bowes, J. dissenting) (some citations omitted).

Reconsidering **Gordon**, this Court, *en banc*, now concludes that the Majority Opinion in **Gordon** was incorrectly decided. First, the panel should have determined, at the outset, whether the appeal fell within the jurisdiction of the Superior Court. **See e.g.**, **Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth**, 877 A.2d 383, 392 (Pa. 2005) ("Prior to considering the merits of the legal issues before us, we must address . . . threshold matters. First, we will determine our jurisdiction to entertain this challenge . . ..").  The **Gordon** Majority improperly deferred its jurisdictional determination until **after** it had affirmed the trial court's entry of summary judgment and denial of intervention. This was error. The Majority should have determined its jurisdiction over the appeal as a threshold matter. **See id**.

Moreover, the Majority compounded that error by using its substantive rulings to justify its acceptance of jurisdiction over the appeal. Importantly, Johnson claimed that the local Democratic party Rule violated section 2842 of the Election Code. Rather than considering, initially, whether the election-related claims brought the appeal within the jurisdiction of the Commonwealth

- 11 -

Court, the **Gordon** Majority eliminated the basis for that jurisdiction by deciding the merits on procedural grounds. 80 A.3d at 474 (reasoning that it could accept appellate jurisdiction because "we were not required to apply, interpret, or enforce the Election Code in reaching our holding"). In doing so, the **Gordon** Majority usurped the General Assembly's prerogative **not** to vest appellate jurisdiction over election matters in the Superior Court by sidestepping the express provisions of section 762(a)(4)(i)(C) of the Judicial Code. Because the Legislature vested the Commonwealth Court with exclusive appellate jurisdiction over election matters, it was that Court's prerogative and duty to decide the substantive questions of standing, mootness and ripeness presented in **Gordon** – not ours.

Finally, the **Gordon** Majority should not have invoked Rule 741 to assert jurisdiction over the appeal on the basis that "[a]ppellees did not object to this Court's jurisdiction, and judicial economy was served by our deciding the case after it was filed, briefed, and argued before us." 80 A.3d at 474-75. Ordinarily, Rule 741 allows this Court to accept jurisdiction of an appeal that belongs in another appellate court when the parties do not object. **See Commonwealth v. Smith**, 722 A.2d 167, 169 (Pa. Super. 1998). However, even where no party objects to this Court's exercise of appellate jurisdiction, as was the case in **Gordon**, we still have discretion under rule 741 to transfer the matter to the Commonwealth Court. **See e.g. Fengfish v. Dallmyer**, 642 A.2d 1117, 1120 n.2 (Pa. Super. 1994); Pa.R.A.P.741(a) (providing that

jurisdiction is not perfected if "the appellate court shall otherwise order."). Indeed, we **should** transfer the appeal where the interests of the parties and matters of judicial economy are outweighed by other factors, such as whether our retention will disrupt the legislatively ordained division of labor between the intermediate appellate courts; or whether there is a possibility of establishing two conflicting lines of authority on a particular subject. **See Trumbull Corp.**, 474 A.2d at 399.

Given the Commonwealth Court's exclusive appellate jurisdiction over claims involving election matters, we conclude that "judicial economy" was an insufficient basis for the **Gordon** Majority to accept jurisdiction over the election-related appeal. **See Commonwealth v. Jackson**, 858 A.2d 627, 630-31 (Pa. Super. 2004) ("the concepts of 'institutional comity' and 'system-wide efficiency' should not be relied upon as reasons for this Court's exercise of appellate jurisdiction."). As Judge Bowes warned, "[t]his Court simply has no experience with election contests and the majority has risked rendering a decision that may conflict with the body of law existing in the Commonwealth Court as to the issues it addresses." **Gordon**, 80 A.3d at 476 (Bowes, J., dissenting). Moreover, by asserting jurisdiction over the appeal, the **Gordon** Majority risked establishing two conflicting lines of authority on the Election Code, which is within the purview and expertise of the Commonwealth Court. Thus, to the extent that **Gordon** stands for the proposition that this Court can

entertain appeals involving matters within the exclusive jurisdiction of the Commonwealth Court, it is specifically overruled.

We now hold that, in deciding whether this Court has appellate jurisdiction, we must consider all of the potential issues underlying the parties' theories of the case. If any potential substantive issue (or participation of a particular party) invokes the Commonwealth Court's jurisdiction, transfer is appropriate, and we must transfer **_prior to_** reaching the merits of the appeal. Otherwise, we invade the Commonwealth Court's exclusive jurisdiction to decide those substantive issues and to develop its own, consistent line of precedents.

Turning to the case before us, Mr. Mohn seeks appellate review to address the following two issues:

1. Did the trial court have jurisdiction to address Mohn's request for a declaration that the [BCRC] violated the Pennsylvania Election Code by disqualifying Mohn from his duly elected position as a Republican Committeeperson for alleged misconduct that did not constitute a basis for disqualification under the [L]ocal [P]arty [R]ules?

2. Is Mohn entitled to summary judgment where: (i) the [BCRC] did not have authority to disqualify Mohn as a publically elected committeeman serving his Republican constituents, for alleged violations of [L]ocal [P]arty Ethics Rules, and (ii) allegations of misconduct on the day of the primary election immediately preceding the term from which he was disqualified cannot constitute a basis for disqualification.

Appellant's Brief at 5.

Mr. Mohn's issues on appeal require a determination of the scope of the trial court's jurisdiction under the Election Code to address the application,

- 14 -

interpretation, and enforcement of the Local Party Rules, and whether such jurisdiction is affected by our Supreme Court's holding in **Bentman v. Seventh Ward Democratic Executive Committee**, 218 A.2d 261 (Pa. 1966), a case involving election matters that was decided before the Commonwealth Court was created and vested with exclusive jurisdiction over appeals involving election matters.

Mr. Mohn's issues on appeal also require a determination of whether, in disqualifying Mr. Mohn from his position, the BCRC violated the Local Party Rules, which the BCRC is required to follow under section 2837 of the Election Code, and whether those Rules are inconsistent with the by-laws of the Republican Party of Pennsylvania, in violation of section 2837. Additionally, the appeal requires a determination as to whether the BCRC had the right to direct and discipline Mr. Mohn pursuant to section 2842 of the Election Code. These issues involve election matters that "draw[] in question the application, interpretation or enforcement of . . . statute[s] relating to elections, . . . or other election procedures." 42 Pa.C.S.A § 762(a)(4)(i)(C). Consequently, the subject matter of this appeal directly implicates the Election Code and the Commonwealth Court's precedents applying the Code's provisions.

As the Legislature has designated the Commonwealth Court as the exclusive forum for election-related appeals, we must defer the instant matter to its expertise.

Appeal transferred to the Commonwealth Court. Jurisdiction relinquished.

President Judge Panella, President Judge Emeritus Bender, President Judge Emeritus Gantman, and Judges Lazarus, Dubow, Murray and McLaughlin join this Opinion.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/3/19