J-A29024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| M.W.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH A. BUZOGANY, M.D., | : | |
| ARMSTRONG-INDIANA BEHAVIORAL | : | |
| AND DEVELOPMENTAL HEALTH | : | |
| PROGRAM, INDIANA REGIONAL | : | |
| MEDICAL CENTER, BARBARA A. | : | |
| MCKEE AS THE ADMINISTRATOR OF | : | |
| THE ESTATE OF DONALD L. MCKEE, | : | |
| ESQUIRE, THE COUNTY OF INDIANA, | : | |
| PA,  AMY CLINE, LOUISE KELLER | : | |
| BIVENS, MSW, AND SALLY PRUGH | : | No. 379 WDA 2022 |

Appeal from the Order Entered March 10, 2022
In the Court of Common Pleas of Indiana County Civil Division at No(s):
12227 CD 2018

| | | |
|---|---|---|
| M.W.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH A. BUZOGANY, M.D., | : | |
| ARMSTRONG-INDIANA BEHAVIORAL | : | |
| AND DEVELOPMENTAL HEALTH | : | |
| PROGRAM, INDIANA REGIONAL | : | |
| MEDICAL CENTER, BARBARA A. | : | |
| MCKEE AS THE ADMINISTRATOR OF | : | |
| THE ESTATE OF DONALD L. MCKEE, | : | |
| ESQUIRE, THE COUNTY OF INDIANA, | : | |
| PA, AMY CLINE, LOUISE KELLER | : | |
| BIVENS, MSW, AND SALLY PRUGH | : | No. 380 WDA 2022 |

Appeal from the Order Entered March 10, 2022
In the Court of Common Pleas of Indiana County Civil Division at No(s):
12227 CD 2018

BEFORE:   BENDER, P.J.E., OLSON, J., and KUNSELMAN, J.

DISSENTING MEMORANDUM BY KUNSELMAN, J.:        **FILED: July 21, 2023**

I respectfully dissent from the Majority both on the appellate-jurisdiction issue and on the merits.

First, this appeal falls under the jurisdiction of the Commonwealth Court of Pennsylvania.  My learned colleagues in the Majority acknowledge that any appeal from a final order in this case properly lies in the Commonwealth Court, because (1) Indiana County is a party and (2) "appeals **from final orders** of the court of common pleas involving statutes regulating the affairs or general operations of counties or potential immunity defenses available to counties fall within the exclusive jurisdiction of the Commonwealth Court."  Majority at 12, n.11 (emphasis in original) (citing 42 Pa.C.S.A. § 762(a)(4)(i)(A) and (7); 42 Pa.C.S.A. §§ 8541-8564; 42 Pa.C.S.A. § 8501; 42 Pa.C.S.A. § 102; and **Wheatcroft v. Auritt**, 312 A.2d 441 (Pa. Super. 1973)).  I agree.

However, the Majority decides not to transfer this appeal to that court, in part, because M.W.M. did not appeal from a **final order**.  **See** Majority at 11-15, n.11.  This is erroneous on several grounds.

To begin, the Majority disregards the Pennsylvania Rule of Appellate 701 Under that Rule, "an appeal authorized by law from an interlocutory order shall be taken to, and petitions for permission to appeal from an interlocutory order and petitions for specialized review **shall** be filed in, the appellate court having jurisdiction of final orders in such matters."  Pa.R.A.P. 701 (emphasis added).  This mandatory rule makes clear that interlocutory orders must be

- 2 -

appealed to the same appellate court that would have jurisdiction over an appeal from the final order in a given case. Thus, M.W.M. violated Pa.R.A.P. 701 by appealing to this Court, rather than the Commonwealth Court.

Moreover, the Majority's reliance upon the words "final order" in Section 762(a) is dubious, when considered in light of the other statutory sections on appellate jurisdiction. The other sections all use the same "final order" order language as 42 Pa.C.S.A. § 762(a) (concerning appellate jurisdiction of the Commonwealth Court). **See** 42 Pa.C.S.A. §§ 722, 723, and 724 (stating only "final orders" when vesting direct and discretionary appellate jurisdiction in the Supreme Court of Pennsylvania); See also 42 Pa.C.S.A. § 742 (stating only "final orders" when vesting direct appellate jurisdiction in this Court). Hence, taking the Majority's interpretation of Section 762 to its logical end, no appellate court in Pennsylvania would ever have jurisdiction over an appeal from an interlocutory order, because none of the jurisdiction-positing statutes include "interlocutory orders" in their language. **See id.**

Fortunately, the General Assembly, in establishing the division of labor for our appellate courts, recognized that parties take interlocutory appeals. Where, as here, a party appeals "from an interlocutory order [the appeal] shall be taken to the appellate court having jurisdiction of final orders in such matter." 42 Pa.C.S.A. § 702(a). Thus, the fact that M.W.M. appealed from an interlocutory order does not strip the Commonwealth Court of jurisdiction.

The Majority's makes no mention of Section 702(a). This is error, because "statutes *in pari materia* shall be construed together, if possible, as

one statute." 1 Pa.S.C.A. § 1932(b). "Statutes . . . are *in pari materia* when they relate to the same persons or things or to the same class of persons or things." 1 Pa.C.S.A. § 1932(a).

The sections of Chapter 7 of the Judicial Code deal with the same thing – namely, "Jurisdiciton of Appellate Courts." Therefore, this Court should construe the sections of that chapter "together . . . as one statute." 1 Pa.S.C.A. § 1932(b). Reading the sections of Chapter 7 *in pari materia* reveal that the legislature intended the appellate-jurisdiction statutes to include the words "interlocutory order" wherever the words "final orders" appear. 42 Pa.C.S.A. § 702(a). In short, the legislature intended the Commonwealth Court to have appellate jurisdiction over this collateral-order appeal, because it likewise has appellate jurisdiction over any final order in this case. See 42 Pa.C.S.A. § 762(a).

Still, I recognize that, notwithstanding Pa.R.A.P. 701 and Section 702 of the Judicial Code, the legislature granted discretion to appellate courts to decide a case that has been wrongly appealed to them when neither party has objected. ***See Trumbull Corp. v. Boss Constr., Inc.***, 747 A.2d 395, 398-399 (Pa. Super. 2000); ***see also*** 42 Pa.C.S.A. § 704(a) (stating, "[t]he failure of an appellee to file an objection to the jurisdiction of an appellate court within such time as may be specified by general rule, shall, unless the appellate court otherwise orders, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of this title, or of any general rule adopted pursuant to section 503 (relating to reassignment of matters),

vesting jurisdiction of such appeal in another appellate court").  In this regard,
we have explained:

> When the legislature established the separate jurisdictions of the Supreme Court, the Commonwealth Court, and the Superior Court, it recognized that two distinct problems could arise.  First, if a party inadvertently or unwittingly appealed to the wrong court, his appeal time might run before the error was discovered, and he might lose his right of appeal.  Second, the legislature sought to protect appellate court decisions from collateral attack in those cases where neither party objected to jurisdiction.  To avoid these two pitfalls, the legislature provided a flexible and efficient means of transferring cases from the court to which the appeal was taken to the court to which the legislature allocated subject matter jurisdiction.  At the same time, it reserved to the court to which the appeal was erroneously taken the discretionary power to hear and decide the merits of the appeal when no jurisdictional objection is raised.

*Valley Forge Indus., Inc. v. Armand Const., Inc.*, 374 A.2d 1312, 1316
(Pa. Super. 1977) (citations omitted).

As the Majority notes, in determining whether to exercise discretion to
keep this appeal, we must balance the interests of the parties and matters of
judicial economy against other factors such as: (1) whether the case has
already been transferred; (2) whether our retention will disrupt the
legislatively ordained division of labor between the intermediate appellate
courts; and (3) whether there is a possibility of establishing two conflicting
lines of authority on a particular subject.  *Trumbull*, 747 A.2d at 399.

More recently, this Court, sitting *en banc*, unanimously held:  "If any
potential substantive issue (or participation of a particular party) invokes the

- 5 -

Commonwealth Court's jurisdiction, transfer is appropriate, and we **must transfer prior to** reaching the merits of the appeal." **Mohn v. Bucks Cnty. Republican Comm.**, 218 A.3d 927, 934 (Pa. Super. 2019) (*en banc*) (emphasis partially added and partially in original). "Otherwise, we invade the Commonwealth Court's exclusive jurisdiction to decide those substantive issues and to develop its own, consistent line of precedents." **Id.** Today, a panel of this Court ignores this *en banc* holding.

The Majority concludes that the interests of judicial economy, as well as the interests of the parties, are best served by this Court retaining jurisdiction of this appeal. I disagree. I believe our disposition could disrupt the division of labor between this Court and the Commonwealth Court, and it may result in conflicting lines of authority. **See Trumbull**, 747 A.2d at 399. The issues to be resolved in this interlocutory appeal involve substantive matters enumerated in Section 762.

The relevant part of Section 762 of the Judicial Code provides:

> **(a) General Rule.** —Except as provided in subsection (b), the Commonwealth Court shall have **exclusive jurisdiction** of appeals from final orders of the courts of common pleas in the following cases:
>
> \*     \*     \*
>
> (4) Local government civil and criminal matters.
>
> > (i) All actions or proceedings . . . where is drawn in question the application, interpretation or enforcement of any:
> >
> > > (A) statute regulating the affairs of political subdivisions, municipality and other local

- 6 -

authorities or other public corporations or of the officers, employees or agents thereof acting in their official capacity.

42 Pa.C.S.A. § 762(a)(4)(i)(A). (Emphasis added.)

The crux of this lawsuit involves whether Indiana County, through the actions of its employees in the public defender's office, can be held civilly liable for violating statutes set forth in the mental health treatment programs and facilities act. *See* 50 P.S. §§ 4301-4305 and 16 P.S. §§ 9960.1-9960.13. The collateral issue raised on this appeal is whether the plaintiff's mental health records from the last several years are discoverable in the lawsuit against the hospital and the county.

By deciding this issue, we weigh in on matters that could affect the civil liability of Indiana County. This is an area that the legislature specifically and exclusively reserved to the Commonwealth Court under 42 Pa.C.S.A. § 762(a). And, because we could decide this discovery issue differently than the Commonwealth Court might, we risk creating divergent lines of authority. Therefore, under the binding precedent of this Court, "we must transfer" the instant matter to Commonwealth Court. *Mohn*, 218 A.3d at 934.

I appreciate that the parties and this Court have spent significant time on this appeal already. Judicial economy will always be affected if we decide to transfer a case that has been wrongly appealed to our Court. But, on balance, for the reasons noted above, I believe we should transfer this appeal to the Commonwealth Court.

That said, because my colleagues have asserted jurisdiction based on the appellees' failure to seek a transfer to the Commonwealth Court, I also dissent on the merits.

The Majority correctly sets forth the law on the confidentiality of mental health records, so I need not restate it here. **See** Majority at 17-22. Indeed, the Majority acknowledges that courts must use great caution in finding that a plaintiff impliedly waived the confidentiality of these records when bringing a personal injury lawsuit. **Id**. at 22 (citing **Octave v. Walker**, 103 A.3d 1255, 1262 n.8, 1263 (Pa. 2014)) ("[a]llowing a defendant to initiate a fishing expedition into a plaintiff's mental health records to explore whether any information may be potentially relevant or contradictory to the subject of the action would destroy the purpose of the "confidentiality protections"). Yet, the Majority ultimately concludes that M.W.M. impliedly waived the confidentiality privileges afforded to him pursuant to the MHPA and the DAA. I disagree.

M.W.M.'s lawsuit is narrowly focused on the defendants' actions during a specific time period. He concedes that his mental health records for the 30 days preceding his commitment on December 20, 2016, are relevant to this case. **See** M.W.M.'s Brief at 10, 27. As such, M.W.M.'s appeal is limited to a challenge of the production of medical, mental health, and substance abuse treatment records generated prior to the 30-day period leading up to December 20, 2016.

The basis for all of M.W.M.'s claims is that, after arriving at the hospital and during the commitment process, he was denied the use of a telephone, denied his right to contact private counsel, denied the right to communicate with individuals outside of the hospital, denied adequate notice of his 303 hearing, and denied adequate assistance of counsel. *See* M.W.M.'s Third Amended Complaint at 4-15, 17, 35.

The trial court acknowledged that all of his claims are for events that occurred *after* he arrived at the hospital:

> [M.W.M.] specifically argues that [the doctor] held [him] against his will without a timely medical examination, extended [M.W.M.'s] commitment under 50 P.S. § 7303 without proper cause, failed to advise [M.W.M.] of his rights, provided inadequate notice and denied a continuance of the 303 hearing to advance [the doctor's] own interests, restricted [M.W.M.'s] phone access and his ability to contact counsel of his choice, and breached the professional duties owed to [M.W.M.] under the MHPA.

Trial Court Order, 3/10/22, at 2.

As M.W.M. argues, the trial court ignored that the MHPA states that only information within 30 days is relevant and the records the defendants were seeking from beyond that time frame could not be used for the purpose for which the trial court ordered their disclosure. In other words, even if M.W.M. suffered from mental illness in the prior three to five years, any records from more than 30 days prior are beyond the scope of review. Such records are irrelevant as to whether he met the statutory requirements for involuntary commitment on December 20, 2016. Moreover, M.W.M. correctly states:

The [trial] court's holding creates a shockingly broad new precedent whereby any person who files a claim contending that his or her rights were violated when subjected to involuntarily commitment has necessarily and impliedly authorized the release of years of mental, medical, and substance abuse treatment records. This Court should not permit such a dangerous precedent.

M.W.M.'s Brief at 23.

To obtain both a 302 and/or a 303 commitment, the facility must determine that a patient is "severely mentally disabled." 50 P.S. § 7302(b) and 7303(c)(1). In order to be adjudged as "severely mentally disabled," a patient must have been "a clear and present danger of harm to others or to himself" which "shall be shown by establishing that *within the past 30 days* the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated." 50 P.S. § 730 1 (b)(1)(emphasis added).[1] Thus, by statute, only events within

_____

[1] The full text of the statute provides:

> **(b) Determination of Clear and Present Danger.** --(1) Clear and present danger to others shall be shown by establishing that *within the past 30 days* the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. If, however, the person has been found incompetent to be tried or has been acquitted by reason of lack of criminal responsibility on charges arising from conduct involving infliction of or attempt to inflict substantial bodily harm on another, such 30-day limitation shall not apply so long as an application for examination and treatment is filed within 30 days after the date of such determination or verdict. In such case, a clear and present danger to others may be shown by establishing that the

*(Footnote Continued Next Page)*

conduct charged in the criminal proceeding did occur, and that there is a reasonable probability that such conduct will be repeated. For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

(2) Clear and present danger to himself shall be shown by establishing that ***within the past 30 days***:

> (i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act; or

> (ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide; or

> (iii) the person has substantially mutilated himself or attempted to mutilate himself substantially and that there is the reasonable probability of mutilation unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger shall be established by proof that the person has made threats to commit mutilation and has committed acts which are in furtherance of the threat to commit mutilation.

50 Pa.C.S.A. § 7301 (emphasis added).

the most recent 30 days could have been considered when determining whether M.W.M. was properly committed. Appellees cannot justify their actions with information that they were either aware or unaware of from beyond that time period.

In short, the information Appellees seek to discover is not relevant and is unlikely to lead to any other relevant evidence regarding their actions when they committed M.W.M. on December 20, 2016. As such, I would find that the trial court erred in compelling M.W.M. to disclose his prior mental health history for the past three to five years beyond the relevant 30-day window.[2]

For these reasons, I dissent.

---

[2] As a final note, because the Majority here believes the documents are discoverable, the only ruling I agree with in the Majority decision is that the trial court should impose limitations on the use of this information. ***See*** Majority at 30-31.